[No. 383-2.   Division Two.   July 29, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. LE ROY A. WIGLEY, *Appellant*.

*Stritmatter & Stritmatter* and *Paul Stritmatter*, for appellant (appointed counsel for appeal).

*L. Edward Brown, Prosecuting Attorney*, and *Curtis M. Janhunen, Deputy*, for respondent.

PETRIE, C.J.—The defendant appeals from a conviction of assault in the second degree, RCW 9.11.020(4).

The facts may be briefly summarized. As a result of a heated family argument, defendant's wife took their children to her mother's home. Defendant followed, took his 15-month-old daughter, and returned home. His wife was then in the process of filing a complaint with police; and a warrant for his arrest was issued in connection with that complaint. The police then telephoned the defendant, notified him that his wife was swearing out a complaint, and asked if she could pick up the child. He refused. Shortly thereafter the police proceeded to his home to serve the warrant and take him into custody. However, defendant appeared at the door with his child under his arm and threatened to harm the child if they did not leave. The

officers testified that he was brandishing a knife and had held it to the baby's throat while threatening to harm her. Eventually he was taken into custody without incident and the child was unharmed. He was charged with assault in the second degree, convicted and sentenced. He now appeals.

Defendant first assigns error to testimony elicited by the prosecution over his objection. To facilitate this review, these questions and answers will be set out:

(Officer Marrs—Direct)

Q Officer Marrs, did you think he was serious in his threats?

(objection overruled)

A Can I have the question again?

Q Officer Marrs, do you feel that on this day the defendant Le Roy Wigley meant his threats seriously?

A I felt it to the extent that I did not feel I could take any chances at all on his behavior. Yes, I was very scared of the consequences.

(Officer Sundstrom—Direct)

Q When Mr. Wigley stated to you the part about the knife and child, did you take Mr. Wigley seriously?

(objection overruled)

A From his appearance, I took him seriously.

(Officer Layng—Direct)

Q Captain Layng, based upon your prior experience with the defendant Le Roy Wigley, what was your opinion of his mental state on that day?

(objection overruled)

A He appeared mad, frustrated.

Q Did he appear serious?

A Yes, he did.

In each instance, the prosecutor had established that the officer was personally acquainted with the defendant and had personally observed the incident. Defendant objected to these questions on the ground that they called for an answer as to the appellant's state of mind, *i.e.*, whether or not the act was willful, which was the ultimate fact to be decided by the jury.

The general rule is that witnesses are to state facts, and not to express inferences or opinions. *State v. Dukich,*

131 Wash. 50, 228 P. 1019 (1924). Expressed definitively, it is said that a layman who sees the commission of a crime can describe the acts, the appearance and the demeanor of a defendant, from which inferences as to a defendant's mental processes may be drawn. *State v. Farley*, 48 Wn.2d 11, 290 P.2d 987 (1955). While it is a rule easily stated, it is often difficult to apply when the question arises at trial. It may be that in many cases it is impossible for a witness to testify in terms of pure fact; testimony inherently involves a "thinking out into language", the transformation of thought to word, and the thought process involves much more than mere recording of fact. In *State v. Riggs*, 32 Wn.2d 281, 283, 201 P.2d 219 (1949), our Supreme Court quoted the following passage from 32 C.J.S. *Evidence* § 459, at 101:

> "Much effort is expended during the trial of causes to confine the testimony of witnesses to statements of what they saw, heard, or otherwise observed, as distinguished from the inferences or opinions formed as a result of such observation. The distinction is, however, one which it is in many cases impossible to draw, for the reason that the most simple statement of fact involves an element of coordination, induction, or inference, the fact and the inference being frequently so blended that they cannot be separated. The modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness is permitted to state a fact known to or observed by him, even though his statement involves a certain element of inference.

That quotation lucidly expresses the inherent problems of the "opinion" rule and the practical adjustments that have been made by many courts.

These adjustments, both actual and suggested, were embodied in rule 401 of the Model Code of Evidence of the American Law Institute, chapter 5, Expert and Opinion Evidence[1] (1942) at 199. This rule has been repeatedly

---

[1]"Testimony in Terms of Opinion.

"(1) In testifying to what he has perceived a witness, whether or not an expert, may give his testimony in terms which include infer-

cited with approval by our courts.[2] Its purpose is to facilitate the giving of testimony by lay and expert witnesses through a prudently simplified testimonial procedure. To this end it allows them to testify in language ordinarily used and easily understood by the judge and jury; they may testify in terms which include inference or conclusions, subject to control by the trial court, which may require they first relate the data upon which the inferences are founded. Obviously, such inferential testimony is limited to matters which the witness has personally observed.

In the present case, the questions asked by the prosecutor may well have been arguably improper, but the answers of the witnesses given in terms of "appearance" and based on personal acquaintance and observation were quite proper. It is proper for a lay witness, in relating his observations, to testify in terms which include inferences and to state all relevant inferences, whether or not they embrace ultimate issues to be decided by the trier of fact, unless the trial judge, exercising judicial discretion, determines that drawing such inferences requires special skill or knowledge or would tend to mislead the jury. *See* rule 401 of the Model Code of Evidence. We, therefore, conclude that the court did not err in allowing the answers herein.

■ The appellant's second assignment of error is that the case should have been dismissed because there was no

---

ences and may state all relevant inferences, whether or not embracing ultimate issues to be decided by the trier of fact, unless the judge finds

"(a) that to draw such inferences requires a special knowledge, skill, experience, or training which the witness does not possess, or

"(b) that the witness can readily and with equal accuracy and adequacy communicate what he has perceived to the trier of fact without testifying in terms of inference or stating inferences, and his use of inferences in testifying will be likely to mislead the trier of fact to the prejudice of the objecting party.

"(2) The judge may require that a witness, before testifying in terms of inference, be first examined concerning the data upon which the inference is founded."

[2]*See Parris v. Johnson*, 3 Wn. App. 853, 856, 479 P.2d 91 (1970), and cases cited therein; in particular, *Gerberg v. Crosby*, 52 Wn.2d 792, 329 P.2d 184 (1958), which thoroughly discusses the rationale underlying rule 401.

proof of apprehension on the part of the victim allegedly assaulted; indeed, that the infant was incapable of apprehension. Conceding that the state does not have to prove apprehension on the part of the victim in a second-degree assault, defendant contends that apprehension must be inferable. That is not the law of this state. Apprehension of one assaulted is simply not a necessary element of second-degree assault. *State v. Stewart,* 73 Wn.2d 701, 440 P.2d 815 (1968); *State v. Brakes,* 1 Wn. App. 987, 465 P.2d 683 (1970).

Affirmed.

PEARSON and ARMSTRONG, JJ., concur.