[No. 1355-1.    Division One—Panel 2.    December 18, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND ROCK, *Appellant*.

*Irving C. Paul, Jr.* and *Roger W. Johnson,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael T. DiJulio, Deputy,* for respondent.

JAMES, J.—Defendant Raymond Rock was convicted of the crime of armed robbery. On appeal his sole assignment of error is the denial of his motion to dismiss on the ground that he was denied a speedy (early) trial as guaranteed him by Const. art. 1, § 22 (amendment 10) and the sixth amendment to the United States Constitution.

The undisputed facts concerning the robbery are that in the early hours on December 15, 1970, Rock, masked with a nylon stocking, at gunpoint robbed a grocery store clerk and a customer. An off-duty Seattle police officer observed Rock emerging from the store premises, pistol in hand. Thereafter, Rock fired a shot at the grocery clerk and in turn was himself wounded by a shot fired by the police officer.

Rock was taken to the University of Washington Hospital where he remained until January 25, 1971. A justice court criminal complaint was filed against Rock on December 15, 1970. A warrant for his arrest was served on December 16, 1970.

At trial, Rock's motion to dismiss was heard prior to impaneling the jury. Testimony was presented which would permit the trial judge to find that the following occurred after Rock was served with the arrest warrant: The matter was scheduled for preliminary hearing in justice court on December 17, 1970, January 4, 1971, January 18, 1971 and February 18, 1971. The preliminary hearing was finally held on March 11, 1971. Presumably the hearing could have been scheduled for an early date after Rock was released from the hospital. But there is no evidence to

suggest that the delay was occasioned by other than oversight. At the March 11 hearing, Rock was represented by appointed counsel, a member of the public defender's staff.

Rock was bound over for trial in superior court and served with the information on March 24, 1971. He was arraigned on April 8, 1971, at which time he entered a not guilty plea. The case was set for trial on June 10, 1971, but Rock's counsel had the case transferred to the plea calendar of June 29, 1971, believing that Rock desired to enter a guilty plea. At the June 29 hearing, however, Rock refused to plead guilty.

Counsel's understanding that Rock wished to plead guilty came about as a result of discussions between Rock and an intermediary employed by the public defender's office. The intermediary was a man who had, as had Rock, served time in a state penal institution. Pursuant to his understanding, Rock's counsel had, by plea bargaining, obtained an agreement that the prosecuting attorney would lower his minimum term recommendation from 10 to 7½ years upon a plea of guilty to the charge of assault in the first degree.

Rock and his first appointed counsel "agreed to disagree" and new counsel was appointed. Rock appeared with his second counsel at the arraignment calendar of July 14. At that time, according to Rock's affidavit, he "demanded his right to a speedy trial" but "despite [his] demand for a speedy trial, a trial date of October 21 was set." On August 6, Rock's newly appointed counsel served and filed a motion to dismiss because Rock had been denied a speedy trial. However, on August 17, before the motion was heard, counsel No. 2 withdrew because of a possible conflict of interest. (He had been a member of the prosecuting attorney's staff at the time the warrant for arrest was served.) A third attorney was appointed to represent Rock but he withdrew on September 8, reporting that Rock had no confidence in him and desired his replacement. Rock's present counsel was then appointed and he represented Rock at the trial which commenced October 21, 1971.

■ We undertake the disposition of Rock's claim guided by the United States Supreme Court's stated "attempt" to "set out the criteria by which the speedy trial right is to be judged." *Barker v. Wingo*, 407 U.S. 514, 516, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). For the last 60 years the Washington Supreme Court has recognized, as does the United States Supreme Court, that speedy trial cases must necessarily be considered "on an *ad hoc* basis." *Barker v. Wingo, supra* at 530; *State v. McEvers*, 76 Wn.2d 34, 454 P.2d 832 (1969); *State v. Alter*, 67 Wn.2d 111, 406 P.2d 765 (1965); *State ex rel. Orcutt v. Simpson*, 125 Wash. 665, 216 P. 874 (1923); *State v. Miller*, 72 Wash. 154, 129 P. 1100 (1913). In *State v. Miller, supra* at 163, the Washington Supreme Court enunciated a basic criterion applicable to all cases:

> The constitutional privilege of a speedy trial was intended to prevent an arbitrary, indefinite imprisonment, without any opportunity to the accused to face his accusers in a public trial. It was never intended as furnishing a technical means for escaping trial.

*Barker* also recognized that the societal interest in trying people accused of crime must be considered when the alternative is immunization because of legal error. *Barker v. Wingo, supra* at 522 n.16.

The approach adopted by the United States Supreme Court in determining whether constitutional principles have been honored by a trial court is "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker* "identifies" four factors "which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial. They are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Footnotes omitted.) *Barker v. Wingo, supra* at 530.

The able and experienced trial judge concluded that Rock had not been denied a speedy trial. He observed that although Rock's preliminary hearing could have taken

place after Rock was transferred to the county jail on January 25th, the delay until March 11 was not unreasonable because Rock needed time to recuperate after 6 weeks of hospitalization. He found that the loss of the first trial date, June 10, was explained by counsel's good faith efforts at plea bargaining. The trial judge wisely observed that:

> It is quite apparent that the long delay has been due to the acts of attorneys for the defendant, but I would be the last to say that what [counsel] attempted to do was not in the best interests of the defendant. It was done in good faith, and the defendant must be bound by the acts of [counsel]. Courts simply cannot function if the defendants are permitted to disown the acts of their attorney, except in the most extraordinary circumstances where it is shown that the attorney was grossly neglectful of his client's rights and it must be borne in mind that the prosecution must be permitted to rely on the acts of the attorney, else the Court simply cannot function [in] the criminal field, particularly in a county the size of this where the number of criminal cases are so numerous and the calendar is so far behind in the trial of all types of actions.

The trial judge further found that although the delay until October was considerable, it was accounted for by the fact that Rock was unable to "get along" with those appointed counsel who were persuaded that he had little chance for acquittal and who felt that a bargained guilty plea was his best choice.

Rock testified that he had discussed the advisability of seeking a dismissal for want of a speedy trial with the intermediary from the public defender's office prior to the June 29 hearing. The intermediary advised him that he "didn't have no leg to stand on."

At trial, Rock testified that he had refused to plead guilty at the June 29 hearing because he "wanted a motion for dismissal filed to get it on the record that [he] was protesting lack of speedy trial." When read in its entirety, Rock's testimony makes it clear that in fact he did not want a speedy trial. What he sought was a "technical means for escaping trial." *State v. Miller, supra* at 163.

*Barker* "places the primary burden on the courts and the prosecutors to assure that cases are brought to [speedy] trial." *Barker v. Wingo, supra* at 529. Considering the sincerity of Rock's assertion of his right to a speedy trial, we are satisfied that the state has met its burden with respect to the first three "factors" of *Barker.* The length of delay, here some 10 months, is not unreasonable in the light of the reasons therefor: first, hospitalization and recuperation, and second, a series of delays stemming from Rock's disagreements with counsel.

We then consider *Barker's* fourth factor: Was Rock substantially prejudiced by the delay? At trial, Rock's only defense was that he was too intoxicated to form an intent. Rock does not claim, and could not claim, that he was prejudiced by his confinement while awaiting trial because, as the trial judge observed, Rock's parole was revoked while he was still hospitalized.

Rock argues, however, that he was prejudiced by the delay because the lapse of time made it more difficult, if not impossible, for him to locate additional independent witnesses who might have testified as to the degree of his intoxication during the hours before he committed the robbery.

Rock told the jury that he was so intoxicated that he had absolutely no memory of committing the robbery. He said that on the day of the robbery, he had celebrated his birthday by drinking all day. He claimed that shortly after he was hospitalized, he underwent the withdrawal symptoms of delirium tremens. But significantly, he called no one from the hospital staff to verify his claim.

Rock called as a witness in his behalf the owner of the tavern where he spent most of his birthday. She testified that Rock was a heavy drinker, but she knew nothing of his condition on his birthday because it was her day off. She did, however, give the names and addresses of the two women who tended bar on that day. Rock testified at the hearing of his motion to dismiss that he believed that, if

called, they would testify that he drank from 6 a.m. until the tavern closed at night. But Rock makes no claim that he attempted to call the women or that they were unavailable.

In similar fashion Rock intimates that he could have produced other objective testimony as to the degree of his intoxication had he been granted an earlier trial, but he makes no showing that such evidence was unavailable at his October trial.

█ Evaluation of Rock's testimony necessarily requires judgment of his credibility. The learned trial judge observed that he was "not too impressed with what the defendant has to say about these witnesses. There is no showing as to just what they would testify; there is no showing that any of them have been interviewed and that they would help him out in any way." The trial judge was in the best position to evaluate Rock's good faith in claiming that the witnesses would be helpful to his defense and that they were unavailable because of the delay.

> Seldom will an appellate record provide a basis for a meaningful review of a trial judge's determination of witness credibility.

*Federal Fin. Co. v. Solomon,* 7 Wn. App. 626, 628, 501 P.2d 627 (1972).

We are satisfied that the delay did not substantially deny Rock the opportunity to obtain evidence in support of his intoxication defense. The trial judge did not err in denying Rock's motion to dismiss.

The judgment is affirmed.

FARRIS, A.C.J., and SWANSON, J., concur.