[No. 1477-1. Division One—Panel 1. March 5, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC L. HAGA, *Appellant.*

*Barokas, Martin & Richey, Jack A. Richey*, and *Larry L. Barokas,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney*, and *Lee D. Yates, Deputy*, for respondent.

CALLOW, J.—Defendant appeals from a jury conviction of the first-degree murders of his wife and infant daughter.

The deaths occurred in the early morning of July 6, 1966. The defendant has maintained since that date that he was asleep in the bedroom of their rented home and awoke in the morning to find his wife and the youngest of two daughters strangled. A neighbor testified that the defendant appeared at his door on the morning in question and said, "there was something wrong with Judy." The neighbor accompanied the defendant into the house and found the wife's body in the living room, where, according to the defendant's testimony, she had slept that night because neither was feeling well. The body of the infant girl was found in a bedroom.

The state introduced evidence that the Hagas had been separated in the summer of 1965 and that Mrs. Haga had lived with another man for a short period of time prior to

their reconciliation. Evidence was introduced concerning the issuance of life insurance on the family, and other evidence was admitted showing that the defendant had lied on a loan application in an attempt to secure extra money for the purchase of a sports car. There was testimony that there had been several instances of prowlers in the neighborhood, and a prowler had been seen the afternoon of the crimes. A neighbor testified that he saw a man in the Haga living room about 6:40 a.m. wearing what appeared to be a coat. No evidence linked the defendant directly to the murders although it is undisputed that he was in the house during the night of the crimes. The time of the deaths was approximated as between midnight and 4 a.m.

### DELAY IN PROSECUTION

The defendant contends that the delay from the commission of the crimes to the commencement of prosecution, a period of over 5 years, amounted to a denial to him of due process of law under the federal and state constitutions.

Any inquiry into delay in criminal prosecutions must begin with the relevant statute of limitations. "[T]he applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." *United States v. Ewell*, 383 U.S. 116, 122, 15 L. Ed. 2d 627, 86 S. Ct. 773 (1966). There is no statute of limitations on murder in Washington. RCW 10.01.020.

The problem of "pre-arrest" or "pre-accusation" delay of a duration less than the relevant statute of limitations as potentially violative of constitutional safeguards is one with which the Supreme Court has only recently been concerned.

In *United States v. Marion*, 404 U.S. 307, 322, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971), the majority held that the Sixth Amendment guarantee of a speedy trial did not apply to delays prior to indictment or arrest. In a concurring opinion, three justices argued that the speedy trial guarantee should apply. The opinion of the majority said:

> The law has provided other mechanisms to guard against possible as distinguished from actual prejudice

resulting from the passage of time between crime and arrest or charge. . . . [Statute of limitations] represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they "are made for the repose of society and the protection of those who may [during the limitation] . . . have lost their means of defence." *Public Schools v. Walker,* 9 Wall. 282, 288 (1870). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced. . . .

. . .

. . . *it is appropriate to note here that the statute of limitations does not fully define the appellees' rights with respect to the events occurring prior to indictment.* Thus, the Government concedes that *the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.* Cf. *Brady v. Maryland,* 373 U.S. 83 (1963); *Napue v. Illinois,* 360 U.S. 264 (1959). However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. .

(Footnotes omitted. Italics ours.) The majority opinion concludes that, "Events of the trial may demonstrate *actual prejudice,* but at the present time appellees' due process claims are speculative and premature." (Italics ours.) In a footnote, the court observed that most courts of appeal which have considered pre-indictment delay as a ground for dismissal have treated the question as one of due process and required a showing of actual prejudice.

 Although the *Marion* case has been cited for the proposition that due process will require dismissal only when a pre-indictment delay is both actually prejudicial *and* intentionally caused by the prosecutor (*United States v. Beitscher,* 467 F.2d 269 (10th Cir. 1972); *United States v. Daley,* 454 F.2d 505 (1st Cir. 1972)), the more prevalent view would dismiss a criminal prosecution when actual prejudice is shown, and the prosecutor had no reasonable

justification for the delay. *See United States v. Hauff*, 461 F.2d 1061 (7th Cir. 1972); *United States v. Iannelli*, 461 F.2d 483 (2d Cir. 1972); *United States v. Mones*, 336 F. Supp. 1322 (S.D. Fla. 1972).

While intentional pre-indictment delay which actually prejudices a defendant would be grounds for dismissal of a charge (*see Stuart v. Craven*, 456 F.2d 913 (9th Cir. 1972); *Hanrahan v. United States*, 348 F.2d 363 (D.C. Cir. 1965)), there may be circumstances *short* of purposeful delay which, if actually prejudicial to a defendant, would require dismissal.

The factors relevant to a determination of the defendant's contention, which is based upon the due process clause, are similar to the factors delineated in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), concerning the guarantee of a speedy trial. The court identified four factors which must be considered in determining whether the right to a speedy trial had been denied. These factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *See also State v. Rock*, 8 Wn. App. 116, 504 P.2d 331 (1972).

Distinctions must be made between the speedy trial analysis applicable to post-accusation delays and the due process analysis relevant to pre-accusation delays. First, citizens cannot be expected to periodically search their consciences and demand that the state grant them exculpation. "There is no constitutional right to be arrested." *Hoffa v. United States*, 385 U.S. 293, 310, 17 L. Ed. 2d 374, 87 S. Ct. 408 (1966).

Second, the sort of prejudice likely to result from pre-accusation delays differs from that caused by post-accusation delays. The *Barker* case identifies three ramifications of post-accusation delay which may prejudice a defendant: (1) pretrial incarceration, (2) anxiety and concern of the accused and (3) impairment of the defense. Only the impairment of the defense seems relevant to this case. Impairment of an ability to offer a defense is the impairment of a

vital interest. *Barker v. Wingo, supra; Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966).

With these considerations in mind, we turn to a discussion and weighing of the factors determinative of the defendant's contention.

The length of the delay between the crimes and initiation of formal accusation was over 5 years. In *Dickey v. Florida,* 398 U.S. 30, 26 L. Ed. 2d 26, 90 S. Ct. 1564 (1970), Justice Brennan in a concurring opinion suggested that once delay reached a certain point substantial prejudice should be presumed. However, he did not specify at what point such a presumption would arise. The delay in this case is long enough to cause concern about the dimming of memories and lost evidence.

The sole reason for the delay was an apparent difference of opinion between the prosecuting attorney in office at the time of the crime and his successor, who took office in January 1971, as to whether there was sufficient evidence on which to prosecute. No other reason was offered at trial or on appeal. In pretrial proceedings, the prosecutor said: "[T]here has been a five year delay. I don't know why." During oral argument on appeal, the following colloquy occurred:

THE COURT: What was there available to a prosecutor in 1971 that was not available to a prosecutor in 1965?

PROSECUTOR: I would have to say that either the evidence was the same or that the people who reviewed the case in 1966 weren't as thorough as the people who reviewed the case in 1971.

■ Three reasons are considered by courts as sufficient justification for delay:

1. The case may be of such a complex nature that considerable time was necessary to prepare the case for prosecution. *United States v. Marion, supra.*

2. It would hinder effective law enforcement operations to charge the defendant immediately after the commission of the crime. This justification sometimes is tendered in cases involving organized crime. *United States v. Russo,*

442 F.2d 498 (2d Cir. 1971); *DuFrane v. Sheriff, Washoe County,* 88 Nev. 52, 495 P.2d 611 (1972).

3. There was insufficient evidence available to prosecute the defendant up until the time he was actually charged. *Harlow v. United States,* 301 F.2d 361 (5th Cir. 1962); *Foley v. United States,* 290 F.2d 562 (8th Cir. 1961).

The absence of the usual reasons for delay is not, of itself, fatal to the state's right to proceed. The justification for the delay must be balanced against prejudice to the defendant's ability to offer such evidence as there is in his defense.

The defendant alleges he was prejudiced by the delay in the following instances:

1. The ability to defend on the ground of mental irresponsibility was diminished since a psychiatrist's current examination could not reveal clearly the defendant's mental condition in 1966.

2. Certain potential defense witnesses had become unavailable. The family doctor had died, and the family priest could not be located. The defense asserts that these witnesses "may have been able" to indicate that Mr. and Mrs. Haga were compatible and past marital problems had been cured. We note that no offer of proof as to their testimony was possible, and there is no reflection concerning the admissibility of such testimony in any event.

3. A major portion of the tape recording of the defendant's statement made in 1966 was lost by the police. We observe that the defendant objected to admission of the remaining portion of the tape at all times during the trial.

4. A letter from the man with whom Mrs. Haga had lived prior to the reconciliation sent to Mrs. Haga's mother was unavailable. Mrs. Haga's mother testified in a pretrial hearing that she received the letter after the deaths and sent it to the police. No mention of the letter was allowed at trial, and its contents are not mentioned in the record other than that the decedent wife's mother felt it important.

5. Several witnesses showed poor memories:

a. An ex-police officer who had investigated the crime had since lost his memory due to an accident. He was called as a prosecution witness but had no memory of the events. His report was excluded on the defendant's motion.

b. Dr. Dona was the first doctor on the scene. He was unable at the trial to recall his actions or remember the extent of rigor mortis when he first saw the body. This evidence would be important to show the time of death. He was unable to recall whether he checked the victim's finger-nails, an important item since the prosecution claimed that the defendant had been scratched by the victim in resisting the attack.

c. A neighbor could not remember whether Mrs. Haga mentioned a prowler the night of her murder. In 1966, he said she did. Evidence of his prior statement was admitted for impeachment purposes.

d. Another neighbor could not recall where he heard a loud car stop at 12:40 a.m. the night of the murder. In 1966 in a statement, he said that it had stopped at the Haga house.

e. An insurance agent was unsure whether Mrs. Haga or Mr. Haga asked about insuring the entire family. The prosecution argued that part of defendant's motive could have been insurance money.

f. The defendant was unable to remember many details concerning the day of the crime.

These cumulative contentions have caused us to carefully evaluate the position of the defendant at the time of trial.

The defense counsel presented a vigorous defense. The mother and aunt of the deceased wife were called and testified that they had seen the Hagas the day before the murders and that they seemed happy together. The mother, grandmother and stepfather of the defendant also testified that they had seen the couple shortly before the crime and that they seemed to be happy. The grandmother and mother of the defendant both testified that the defendant had not been feeling well the day before the crimes.

The first doctor to arrive at the scene of the crime had

difficulty recalling the circumstances of his investigation. His statement, taken the night of the murders, was admitted into evidence and was arguably helpful to the defense in that it included observations tending to place the time of death up to 2 hours later than the time estimated by the state's witnesses. Two neighbors testified concerning a car that they heard in the area during the early morning of July 6; a neighbor testified that the deceased wife had complained of prowlers prior to July 1966; and a young man testified to an encounter with a prowler while babysitting for a neighbor of the Hagas. Finally, the defendant testified at length during the trial and denied any participation in the murders.

We conclude that upon an evaluation of the entire proceedings the showing is short of actual prejudice. Only where actual prejudice is shown is reversal justified. *United States v. Marion*, 404 U.S. 307, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971); *United States v. Iannelli*, 461 F.2d 483 (2d Cir. 1972); *United States v. Capaldo*, 402 F.2d 821 (2d Cir. 1968). Prejudice, whenever it is alleged, must be specially demonstrated and cannot be based upon speculation. *United States v. Marion, supra; State v. Christensen*, 75 Wn.2d 678, 453 P.2d 644 (1969); *State v. Rolax*, 3 Wn. App. 653, 479 P.2d 158 (1970). The allegations of prejudice in this case do not overcome the absence of any statute of limitations concerning the crime of murder in the first degree. We hold that the showing of actual prejudice must be sufficient to overcome the legislative intent expressed by the absence of a limitation on prosecution for such a crime, before the prosecution should be forbidden. The showing of actual prejudice is insufficient to amount to a denial of due process when subjected to that criterion.

### OPINION EVIDENCE INFERRING GUILT

The ambulance driver who responded to a call to the Haga residence on the morning of the murders was called by the state. He testified as to the general scene and stated that he observed the demeanor of the defendant. Over the

repeated objections of the defendant, the following testimony was admitted:

> Q Did he show any signs of grief? A No. Q Did you find that unusual? MR. RICHEY: Object. THE COURT: Lay some foundation. Q How long did you indicate that you had been with the mortuary? A I have had my own place for fifteen years. Q During that time have you had occasion to go to scenes where people had died? A Yes, I was a deputy coroner for approximately twelve years. I also operated the ambulance service where I encountered this several times a month—death. Q Based upon your experience did you find the demeanor of the defendant to be unusual? MR. RICHEY: Objection. THE COURT: Overruled.

In argument out of the presence of the jury, defense counsel renewed his objection stating:

> If the Court please, what the prosecutor is attempting to do is have this witness say that the way this defendant acted is unusual, which is a conclusion in relation to other husbands whose wives he has investigated in the past. That is a conclusion on the part of this witness. He has already testified that the defendant showed no grief. That should suffice. That should be sufficient. And then to go ahead and compare it to other persons and other situations goes beyond his realm as a witness in this matter. That goes to what the jury should do. If the jury wants to decide the fact that he showed no grief, and it was unusual that is the jury's prerogative; but it is not the prerogative of this witness.

After the argument, the jury was readmitted and the following testimony admitted:

> Q What was your reason for that? MR. RICHEY: Object, your Honor. He has already indicated that it was unusual and that should be sufficient. THE COURT: Overruled. A For someone whose wife had just been strangled usually the husband or the wife will attempt to assist if it is a heart attack or something. He was very calm and cool about it. And he didn't attempt to assist us. Usually a husband or wife usually is in the way when you are trying to revive them. And he offered no assistance in helping me whatsoever.

As a general rule, witnesses are to state facts and not to express inferences or opinions. *State v. Dukich,* 131 Wash. 50, 228 P. 1019 (1924); *State v. Wigley,* 5 Wn. App. 465, 488 P.2d 766 (1971). The difficulty in limiting testimony to "facts" and excluding all "opinion" was noted in *Wigley* where the court quoted 32 C.J.S. *Evidence* § 459 (1964) as follows:

> The modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness is permitted to state a fact known to or observed by him, even though his statement involves a certain element of inference.

*State v. Wigley, supra* at 467. *See also* Model Code of Evidence rule 401 (1942).

However, within the context of this view, certain testimony remains inadmissible as an expression of an opinion. In *Harrelson v. State,* 217 Miss. 887, 891, 65 So. 2d 237 (1953), the conviction of a defendant accused of the murder of his wife was reversed because the testimony of police officers indicating the defendant did not exhibit the expected signs of grief the day of the murder was deemed prejudicial error. The basis of the court's holding was as follows:

> The evidences of lack of grief are not stated. The opinion of the officers, we assume, was based on the fact that the appellant was not visibly manifesting what the witnesses considered signs of grief. The reactions of a person to sorrow or grief vary with the individual. It is a matter of common knowledge that some people undergo sorrow or bereavement with composure. Opinions as to what constitute evidences of grief also vary with the individual.
> The general rule is that opinion evidence is not admissible except that of an expert. The demeanor, acts and conduct of an accused, at the time and subsequent to the crime are admissible. However, this should be limited to a statement of the facts by the witness or witnesses, leaving the jury free to form its own conclusions. The admission of the opinion of the officers who investigated

the killing that the appellant showed no signs of grief, over the objection of the appellant, was improper and highly prejudicial. The opinion of the sheriff, a prominent official of the county, that the appellant showed no signs of grief conveyed to the jury the impression that the sheriff thought the appellant was guilty, and it was calculated to, and undoubtedly did, influence the jury in reaching its verdict. We are unable to say that the appellant in this case received a fair and impartial trial.

A witness may not testify to his opinion as to the guilt of a defendant. *State v. Garrison,* 71 Wn.2d 312, 427 P.2d 1012 (1967), said at page 315:

> Finally, it is contended that the trial court erred in refusing to permit the proprietor of the burglarized tavern to give his opinion as to whether or not appellant was one of the parties who participated in the burglary. The proprietor of the tavern was in no better position than any other person who investigated the crime to give such an opinion. The question literally asked the witness to express an opinion on whether or not the appellant was guilty of the crime charged. Obviously this question was solely for the jury and was not the proper subject of either lay or expert opinion.

This recognized the impropriety of admitting the opinion of any witness as to guilt by direct statement or by inference as *Harrelson* likewise clearly points out. *See also State v. Norris,* 27 Wash. 453, 67 P. 983 (1902); 5 R. Meisenholder, Wash. Prac. § 342 (1965).

The testimony of the ambulance driver was wrongfully admitted. It inferred his opinion that the defendant was guilty, an intrusion into the function of the jury.

Error which affects or presumptively affects the final results of a trial is deemed prejudicial. We are unable to say whether the defendant would or would not have been convicted but for this error. This testimony, erroneously admitted, could have been a contributing factor in the verdict of the jury. It cannot be deemed harmless. *State v. Mack,* 80 Wn.2d 19, 22, 490 P.2d 1303 (1971); *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968). The conviction must be reversed, and the cause remanded for a new trial.

We turn to other issues raised on this appeal which might arise upon a second trial in order to put them at rest.

In July of 1971, a deputy prosecuting attorney traveled to Oregon to interview the man with whom Mrs. Haga had lived in 1966 while separated from the defendant. The prosecuting attorney learned of this man's history of medical and mental disorders, including tendencies to violence and amnesia, and told him that he need not volunteer this information to defense counsel but that, if asked, he should tell the truth. The state concedes this conduct was improper but argues that the error was harmless.

The state has an affirmative duty to disclose material evidence which may negate guilt or mitigate the degree of the offense where there is reason to believe the evidence is unknown to the defendant. *State v. Finnegan*, 6 Wn. App. 612, 495 P.2d 674 (1972). *See generally Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); ABA standards relating to *The Prosecution Function and the Defense Function* § 3.11 (1971).

The basis for the rule is the due process clause of the Fourteenth Amendment and supression of such evidence, irrespective of the good faith of the prosecution, violates that constitutional provision. *Brady v. Maryland, supra; State v. Temple*, 5 Wn. App. 1, 485 P.2d 93 (1971). Prosecuting attorneys are quasi-judicial officers with an affirmative duty to help assure that an accused is afforded a fair trial. *State v. Gibson*, 75 Wn.2d 174, 449 P.2d 692 (1969); *State v. Huson*, 73 Wn.2d 660, 440 P.2d 192 (1968). However, not every failure to disclose evidence warrants reversal of a conviction. It is only where the failure to disclose has caused prejudice to the defendant and may have had an effect upon the outcome of the trial that a new trial should be granted. *Rhinehart v. Rhay*, 440 F.2d 718 (9th Cir. 1971); *United States v. Bonanno*, 430 F.2d 1060 (2d Cir. 1970).

The defendant states that there is no way of knowing what evidence the prosecution requested Harman to refrain from volunteering and that we should assume the evidence

would have been helpful to the defendant. The deputy prosecutor who interviewed Harman has filed an affidavit stating that he told the witness only that he need not volunteer information concerning his medical history, but that if he did he should tell the truth. The witness, however, did disclose his medical history to the defense prior to trial and allowed defense counsel to examine his medical records. The witness was cross-examined concerning his medical problems and his medical records were offered (but refused) as evidence. Under these circumstances, the misconduct did not prejudice the defendant. The error was harmless.

During the trial, photographs of the deceased wife and child were admitted. The admission of photographs is in the discretion of the trial court and will not be disturbed unless there was an abuse thereof. *State v. Adams,* 76 Wn.2d 650, 458 P.2d 558 (1969); *State v. Newman,* 4 Wn. App. 588, 484 P.2d 473 (1971). Photographs are not inadmissible merely because they are gruesome or inflammatory. *State v. Griffith,* 52 Wn.2d 721, 328 P.2d 897 (1958). The test for admissibility of such photographs is whether their probative value outweighs their probable prejudicial effect. *State v. Adams, supra.* There was no abuse of discretion. Proof of a fact should not be impeded because the process is disturbing. The photographs were properly admitted.

Error is assigned to the refusal to admit statements made by the defendant in 1966. During the CrR 101.20W hearing, the defendant's written statement was considered to determine its admissibility at trial. It was not offered during the trial. The statement was signed by the defendant the day after the homicide and contained a denial of any involvement in the crimes. The state did introduce certain statements made by the defendant to a detective during the same time period in which the other statement was prepared.

Evidence of out-of-court statements offered for the

proof of the matters asserted therein is hearsay. *See generally* 5 R. Meisenholder, Wash. Prac. ch. 20 (1965). *State v. Huff,* 3 Wn. App. 632, 636, 477 P.2d 22 (1970), said the following:

> Out-of-court admissions by a party, although hearsay, may be admissible against the party if they are relevant. 5 R. Meisenholder, Wash. Prac. § 421 *et seq.* (1965); C. McCormick, Evidence § 239 (1954). However, if an out-of-court admission by a party is self-serving, and in the sense that it tends to aid his case, and is offered for the truth of the matter asserted, then such statement is not admissible under the admission exception to the hearsay rule. *State v. King,* 71 Wn.2d 573, 577, 429 P.2d 914 (1967); *State v. Johnson,* 60 Wn.2d 21, 31, 371 P.2d 611 (1962); 5 R. Meisenholder, Wash Prac. § 381 at 380 (1965).

The statement was properly excluded.

The judgment is reversed and remanded for a new trial.

HOROWITZ, C. J., and WILLIAMS, J., concur.

Petition for rehearing denied April 19, 1973.

Review denied by Supreme Court June 20, 1973.