[No. 2762-1.    Division One.    June 9, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC L. HAGA, *Appellant*.

Murray B. Guterson, Edwards & Wetherall, Malcolm L. Edwards, Richard L. Barbieri, Richey & Hohlbein, and Jack A. Richey, for appellant.

Christopher T. Bayley, Prosecuting Attorney, and Thomas H. Wolfendale, Deputy, for respondent.

JAMES, J.—By jury verdicts, defendant Eric L. Haga has twice been found guilty of the premeditated murders of his wife and infant daughter. His first conviction was reversed because of trial error not relevant to this appeal. State v. Haga, 8 Wn. App. 481, 507 P.2d 159 (1973). The evidence introduced at each trial was substantially the same and is summarized in the first appeal opinion.

In his first appeal and again in this appeal, Haga has assigned as error the trial judge's refusal to dismiss the charges against him on the ground that preaccusation delay denied him constitutionally guaranteed rights to due process of law. The homicides occurred on July 6, 1966, but Haga was not charged until August 30, 1971. The State asserts no justification for the 5-year delay.

Haga's claim was rejected in his first appeal. He contends that in rejecting his claim, this court recognized, but failed to apply, the "rule" that "a criminal prosecution must be dismissed when actual prejudice from the delay is shown and the prosecutor had no reasonable justification for the delay." In Haga's first appeal, it is stated that:

> The justification for the delay must be balanced against prejudice to the defendant's ability to offer such evidence as there is in his defense.

State v. Haga, supra at 487. The court found, however, that while there was, in fact, no prosecutorial justification for delay, Haga's claims of prejudice did not "overcome the

legislative intent expressed by the absence of a limitation on prosecution" for the crime of murder in the first degree. *State v. Haga, supra* at 489.

Haga argues that the court "misconceived the role of the lack of a statute of limitations for murder" and

> erred in its application of the due process guarantee to the extent that this court balanced the prejudice to the defendant against whatever legislative intent might be gleaned from the absence of a statute of limitations for murder.

Haga asserts that "[t]he only proper factor to balance against prejudice to the defendant from delay is any reasonable prosecutorial justification that might exist for that delay."

We do not agree.

In *United States v. Marion*, 404 U.S. 307, 321, 30 L. Ed. 2d 468, 92 S. Ct. 455 (1971), the United States Supreme Court declined to "extend the reach" of the Sixth Amendment's guaranty of a speedy trial "to the period prior to arrest" but left open the Fifth Amendment "due process" question of "when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution." *United States v. Marion, supra* at 324.

The court pointed out that statutes of limitations specify the "limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced" and that "[s]uch statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice." (Footnote omitted.) *United States v. Marion, supra* at 322.

We do not read the opinion in the first *Haga* appeal to require a "balancing" of Haga's claims of prejudice against "the legislative intent expressed by the absence of a limitation on prosecution" for the crime of murder. *State v. Haga, supra* at 489. When read in its entirety, it is clear that the holding is that the "interests of the State," *United States v. Marion, supra* at 322, as reflected by the absence

of a statute of limitations, require that proof of "actual" prejudice be "specially demonstrated" and not "be based upon speculation." *State v. Haga, supra* at 489. Significantly, Washington's criminal limitation of actions statute *affirmatively* provides that prosecutions for murder "may be commenced at any period after the commission of the offense." RCW 10.01.020.

In the first appeal, 10 "instances" relied upon by Haga to demonstrate "actual prejudice" were considered. The court concluded that "upon an evaluation of the entire proceedings the showing is short of actual prejudice." *State v. Haga, supra* at 489. We adopt the first appeal analysis of Haga's claims and its conclusion that Haga did not demonstrate actual prejudice.

At the second trial, Haga asserted three additional claims of prejudice related to the unavailability of witnesses. The trial judge considered the additional claims together with the 10 instances discussed in the first appeal. She first observed that she was satisfied that the further delay occasioned by the necessity for a second trial did not prejudice Haga. She pointed out that Haga's additional claims were similar to those considered in his first appeal and concluded that his claim of actual prejudice was not justified. We agree.

The administration of criminal justice is not susceptible of scientific methodization. "Due process" is an abstract concept. In the absence of a limitation statute to provide "predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced," (Footnote omitted.) *United States v. Marion, supra* at 322, a criminal defendant's claimed deprivation of due process because of "actual prejudice" can best be evaluated by the trial judge.

> To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case.

*United States v. Marion, supra* at 325.

Because of her unique opportunity to judge witness credibility and to sense the atmosphere of the trial, the trial judge could best estimate the probable effect of possible evidence lost to Haga by reason of the passage of time. This is especially true in this case because the State's evidence was essentially circumstantial as was the evidence assertedly lost to Haga. As pointed out in *United States v. Marion* at page 322, "[p]ossible prejudice is inherent in any delay, however short; it may also weaken the Government's case." Judicial assessment of the "relative interests" of the State and Haga necessarily involved a "delicate judgment." Our review of the record of the trial persuades us that the trial judge did not err in concluding that Haga failed to demonstrate that he was actually prejudiced by the preaccusation delay.

Haga also assigns as error the trial judge's refusal to declare a mistrial "on the grounds of prosecutorial misconduct in the prosecution's opening statement." He asserts that the statement was argumentative and inflammatory; was replete with intentional misstatements of the evidence; and that it improperly contained expressions of personal belief of the prosecutor concerning evidence offered.

As was pointed out in the first appeal opinion, "No evidence linked the defendant directly to the murders although it is undisputed that he was in the house during the night of the crimes." *State v. Haga, supra* at 483. The State, however, produced evidence of circumstances that arguably demonstrates both a motive and a plan to manufacture false evidence of an unknown prowler who committed the murders. At the point in the prosecutor's opening statement where he first spoke of a "plan" to "mislead the police," Haga's counsel objected that "[T]here is no witness that is going to say this. This is fine for him to argue some time next week but this is not—unless he can say somebody is going to say this." In the absence of the jury, the prosecutor contended that his legitimate purpose was to outline for the jury the matters which the State expected to prove by either direct or circumstantial evidence. The trial judge

cautioned the prosecutor that his statement should be limited to an outline of what the State intended to prove. The jury was recalled.

Subsequently, the prosecutor reached a point in his opening statement where he asserted that the State's evidence would establish that Haga strangled his wife with a necktie. At this point, Haga's counsel objected, and the trial judge again excused the jury. Haga's counsel then moved for a mistrial arguing that, "There is nobody that is going to come in and say that I saw Eric put a necktie around her neck or that she was putting up her hair." Haga's counsel stated that he moved for a mistrial "on the basis of the prosecutor's conduct in disregarding what I think every lawyer responsibly knows is the purpose of an opening statement." He further asserted that the prosecutor was making an argument rather than an opening statement. The motion for a mistrial was denied at this point and was not again renewed.

In *State v. Aiken*, 72 Wn.2d 306, 434 P.2d 10 (1967), our Supreme Court considered a similar claim of error. It was contended on page 351 that the prosecutor's opening statement description of

> the manner in which the shots were fired at the time one of the victims was attempting to rise from the floor; . . . was highly inflammatory and prejudicial, resulting in a denial of a fair trial to the defendants.

As in this case, the prosecution's evidence concerning the homicides was entirely circumstantial. In rejecting the claim, the court said at page 351:

> The prosecuting attorney was entitled to make such statements as long as they were supported by evidence or reasonable inferences therefrom, and were material to the issues of the case. The record discloses that evidence was introduced which, with the reasonable inferences therefrom, supported these statements by the prosecutor.

The court also noted that the prosecutor's statements "were prefaced with the warning that they were not evidence but

an outline of what the state intended to prove at the trial."
*State v. Aiken, supra* at 351.

In concluding his opening statement in this case, the prosecutor said:

> Now, those are the facts as I expect to be able to prove them to you. What I say is not evidence and if the facts come out different, and there is going to be disputes about these facts, if the witnesses tell you something that is not borne out by what I say or if they contradict what I say, well you disregard what I say completely because I'm not a witness and I'm not here to give evidence. The evidence will come from the witness chair and the witnesses will give the evidence. So, if I can't prove everything I have said, you just disregard it completely.

Based upon our review of the record of the trial, we do not find the opening statement to be argumentative, inflammatory, replete with misstatements, or to contain expressions of the personal belief of the prosecution. The trial judge did not err.

Haga further assigns error to the admission of "the hearsay testimony of a prosecution witness (Velma Peterson) and then allowing another prosecution witness to contradict the content of that hearsay testimony." Haga states his contention as follows:

> Velma Peterson's testimony must be divided into two parts, "simple hearsay" and "double hearsay." In the simple hearsay part, the trial court allowed Mrs. Peterson to testify to what Eric purportedly told her of his direct knowledge about Judy's association with Mr. Harmon. In the double hearsay part, the trial court allowed Mrs. Peterson to testify concerning what Eric allegedly told her about what Mrs. Matuska allegedly told him. After Mrs. Peterson testified, the prosecution then had Mrs. Matuska testify that none of the events described by Mrs. Peterson had ever occurred and that she had never told Eric that they had occurred. We are here concerned only with the double hearsay portion of Mrs. Peterson's testimony and the testimony of Mrs. Matuska. Mrs. Peterson's and Mrs. Matuska's testimony was admitted over the continuing objection of the defense.

Mrs. Peterson testified that Eric told her that Mrs. Ma-

tuska had told him of an occasion when she (Mrs. Matuska) and Judy (Haga's wife) "had gone to a few bars or taverns and that Judy had met somebody and taken off and they had chased her all over until they caught up with her. . . . on her way to a hotel room." Mrs. Matuska testified that the incident related in Mrs. Peterson's testimony had not occurred and that she had not told Eric of any such occurrence.

The State's contention at trial was that the testimony was offered, not to prove the truth of the *content* of Mrs. Matuska's purported tattling about Judy, but that the testimony was relevant and, therefore, admissible as evidence of Haga's state of mind. Mrs. Peterson's testimony that Haga had made a statement to her was, of course, not hearsay. Evidence is inadmissible as hearsay only if the testimony in court of a statement made out of court is offered to prove the truth of the matter asserted in the out-of-court statement. 5 R. Meisenholder, Wash. Prac. § 381, at 374 (1965).

Motive is a relevant issue in a homicide prosecution. As a part of its case, the State presented evidence that Haga knew that his wife had been unfaithful and that he questioned the paternity of his murdered daughter. His state of mind was relevant and material to the issue of motive.

> Evidence of out-of-court statements may also be pertinent to prove mental or emotional states or conditions of persons who heard them. For this purpose the evidence is not hearsay. The statement is not introduced to prove its truth but to support an inference concerning its effect on the hearer regardless of its truth. The truth of the statement should then be immaterial.

(Footnotes omitted.) 5 R. Meisenholder, Wash. Prac. § 383, at 389 (1965). The trial judge did not err in admitting the testimony of Mrs. Peterson and Mrs. Matuska.

Haga's final contention is that the trial court erred by limiting him to six peremptory challenges when the jury was selected. He first contends that CrR 6.4(e)(1) "provides on its face" that he was entitled to 12 peremptory challenges.

Without change significant to Haga's contention, CrR 6.4(e)(1) superseded RCW 10.49.060. The relevant portion of the rule is as follows:

In prosecutions for capital offenses the defense and the state may challenge peremptorily twelve jurors each; in prosecution for offenses punishable by imprisonment in a penitentiary six jurors each; in all other prosecutions, three jurors each.

Haga asserts that by charging him with first-degree murder, the State undertook to prosecute him for a "capital offense."

■ Haga recognizes that subsequent to his first trial and prior to his second trial, our Supreme Court in *State v. Baker*, 81 Wn.2d 281, 282, 501 P.2d 284 (1972) held that RCW 9.48.030, "which sets forth the circumstances and procedures by which the death penalty may be imposed in Washington" for premeditated murder, is unconstitutional as a result of the holding of the United States Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972). Haga also acknowledges that in *State v. Johnston*, 83 Wash. 1, 144 P. 944 (1914), it is squarely held that a defendant charged with first-degree murder was entitled to only six peremptory challenges under Rem. & Bal. Code, § 2138[1] because, at the time of trial, capital punishment had been abolished by this state.

The rationale of *State v. Johnston, supra* at 2-3 is:

It is clear that the twelve challenges are only allowed in prosecutions for capital offenses. A capital offense is one which may be punishable with death. Black's Law Dictionary (2d ed.), p. 167. *Ex parte Walker*, 28 Tex. App. 246, 13 S. W. 861; *Ex parte McCrary*, 22 Ala. 65; *Ex parte Dusenberry*, 97 Mo. 504, 11 S. W. 217. The statute above quoted obviously uses the term "capital offenses" as so defined. The second clause, by allowing only six peremptory challenges in prosecutions for offenses pun-

---

[1]Rem. & Bal. Code, § 2138 is the progenitor of RCW 10.49.060 and CrR 6.4(e)(1). It provided: "In prosecution for capital offenses, the defendant may challenge peremptorily twelve jurors; in prosecution for offenses punishable by imprisonment in the penitentiary, six jurors; in all other prosecutions, three jurors."

ishable by imprisonment in the penitentiary, in effect defines such offenses as not capital. . . . Since there is now no capital punishment in this state, there are no capital offenses, hence no offense in prosecution for which the provision for twelve peremptory challenges can be invoked. No amount of argument could add to the clear sequence of this conclusion.

Haga contends, however, that the definition of "capital offense" was "substantially altered" in *State v. Haga*, 81 Wn.2d 704, 504 P.2d 787 (1972).[2] The issue in the case is stated at page 706:

> The sole question in this case is whether the legislature intended a limitation on a defendant's right to bail, upon his conviction of first-degree murder, by reason of the nature of the crime and seriousness of the offense for which he has been convicted, *or* by reason of it being a capital case in which the death penalty could be inflicted.

(Italics ours.)

The court reasoned at page 707

> that the removal of the death penalty in no way affected the nature of the crime or the seriousness of the offense. It was the nature of the crime and seriousness of the offense which, we believe, the legislature had in mind when bail was limited on appeal in capital cases.

The court concluded that RCW 10.73.040,[3] which governs the right to bail pending appeal, requires the trial court, following a first-degree murder conviction, to determine whether "the proof of guilt is clear or the presumption great" for the purpose of deciding whether the appellant should be released on bail. The court determined that *State v. Johnston, supra*, was "distinguishable" because

the concern of the legislature, in granting the defendant

---

[2] *State v. Haga*, 81 Wn.2d 704 is not a Supreme Court review of the opinion in *State v. Haga*, 8 Wn. App. 481. Review of Haga's first trial was denied by the Supreme Court on June 20, 1973.

[3] "In all criminal actions, except capital cases in which the proof of guilt is clear or the presumption great, upon an appeal being taken from a judgment of conviction, the court in which the judgment was rendered, or a judge thereof, must, by an order entered in the journal or filed with the clerk, fix and determine the amount of bail to be required of the appellant; . . ."

12 peremptory challenges in a capital case, was directly related to the seriousness of the *penalty* with which the defendant was confronted, rather than the seriousness of the crime with which she was charged.

(Italics ours.) *State v. Haga*, 81 Wn.2d at 708.

▋  Haga further contends that "protection of the right to an impartial jury trial requires twelve peremptory challenges." He reasons that because Const. art 1, § 21 and Const. art. 1, § 22 (amendment 10) of Washington's constitution guarantee an "inviolate right" to trial by an impartial jury, and because CrR 1.1 provides in part that "[t]hese rules shall not be construed to affect or derogate from the constitutional rights of any defendant," he should have been afforded 12 peremptory challenges as he was in his first trial.

In *State v. Persinger*, 62 Wn.2d 362, 365-66, 382 P.2d 497 (1963), it is pointed out that neither the United States Constitution nor the Washington Constitution

> requires congress or a state legislature to grant peremptory challenges to an accused. Nor does either constitution provide for any particular method of securing to an accused the right to exercise the peremptory challenges which a legislative body grants him. *Holmes v. United States*, 134 F. (2d) 125 (1943); *Philbrook v. United States*, 117 F. (2d) 632 (1941); 31 Am. Jur., Jury § 230. The matter of peremptory challenges rests entirely with the legislature. *People v. Kassis*, 145 Misc. 493, 259 N.Y.S. 339 (1931); *People v. Doran*, 246 N. Y. 409, 159 N. E. 379 (1927); 31 Am. Jur., Jury § 230. It is limited only by the necessity of having an impartial jury. 31 Am. Jur., Jury § 230.

Consistently, Washington's legislature has provided that only an accused who faces a possible death penalty is to be afforded 12 peremptory challenges. The trial judge did not err in holding that first-degree murder was not a capital offense at the time of Haga's second trial and that he was, therefore, entitled to only six peremptory challenges.

Affirmed.

WILLIAMS, C.J., and ANDERSEN, J., concur.

Petition for rehearing denied September 30, 1975.

Review denied by Supreme Court December 15, 1975.