165 P.3d 16 (2007)
STATE of Washington, Respondent,
v.
John Kenneth STEIN a/k/a Jack Stein, Appellant.
In re the Personal Restraint Petition of John Kenneth Stein a/k/a Jack Stein, Petitioner.
Nos. 31980-2-II, 32982-4-II.
Court of Appeals of Washington, Division 2.
August 7, 2007.
As Amended August 21, 2007.
*20 Nancy P. Collins, Washington Appellate Project, Seattle, WA, John (jack) Kenneth Stein (Appearing Pro Se), Vancouver, WA, for Appellant.
Lana Sue Weinmann, Office of the Attorney General, Seattle, WA, for Respondent.
ARMSTRONG, J.
¶ 1 In 1989, a jury acquitted John Kenneth Stein of first degree murder charges and convicted him of three attempted murders and burglary. We dismissed his appeal for failure to perfect the record, but in 1996, the federal district court reinstated the appeal in part because officers of the court contributed to this failure. We then reversed Stein's convictions and remanded for a new trial; the Supreme Court affirmed our decision. Before the second trial, the trial court conducted an extensive hearing on what remedy Stein was entitled to for the State-caused delay. The trial court denied Stein's request to dismiss the charges, concluding that the delay did not prejudice Stein. After the retrial in 2004, a jury again convicted Stein of the attempted murders and burglary.
¶ 2 Stein now argues that the trial court should have dismissed the charges against him due to governmental misconduct, contending that it should have considered governmental misconduct beyond that found by the federal court and that it should have found this misconduct prejudicial.
¶ 3 Stein also contends that the trial court (1) should not have admitted evidence of his role in the murder for which he was acquitted; (2) abused its discretion in admitting (a) a judge's testimony about cases over which he presided, (b) co-conspirator hearsay statements, and (c) testimony of two attorneys about privileged communications; (3) violated his right to confront adverse witnesses by admitting prior testimony and a tape recording made during a deposition; (4) misadvised the jury by referring to several instructions in response to a jury question during deliberations; (5) wrongly imposed consecutive sentences for the attempted murder convictions; and (6) vindictively increased his sentence after his successful appeal.
¶ 4 Stein presents numerous other issues in a statement of additional grounds for review (SAG)[1] and a personal restraint petition (PRP), which we consolidated with his direct appeal. Finding no error, we affirm Stein's convictions and deny his personal restraint petition.

FACTS
¶ 5 In 1987, the State charged John Kenneth Stein, also known as Jack Stein, with *21 conspiracy to commit first degree murder, felony first degree murder, aggravated first degree murder, three counts of attempted first degree murder, and first degree burglary.
¶ 6 The charges related to Stein's attempts to remove people he believed were conspiring to deprive him of substantial assets he stood to inherit from his father, Nicholas Stein. One of Stein's targets was Thelma Lund, Nicholas's long-term companion and caregiver. Another was Ned Hall, a lawyer who was Nicholas's court-appointed guardian. Hall had filed a successful lawsuit to set aside, on the basis of undue influence, a transaction in which Nicholas assigned Stein a real estate sales contract. And Lund testified on behalf of the guardianship and adversely to Stein in that litigation.[2]
¶ 7 Michael Norberg, Stein's stepson, helped Stein by recruiting others to kill Lund and Hall, promising them money or property in exchange for the killings. Roy Stradley testified that he discussed the murders with Stein and that Stein said he was financing the killings, but Stradley declined to participate. Edward Denney, who also did not participate, testified that Norberg told him Stein would pay for the killings.[3] Richard Bailey testified that Norberg told him the money for the killings would come from Stein. Bailey and Gordon Smith eventually agreed to participate in the killings.
¶ 8 In April 1987, Norberg and Bailey murdered Lund in her home. In June 1987, the men attempted three times to murder Hall. The first time, Bailey and Smith took homemade napalm to Hall's house, intending to burn the house down; they fled when Smith said someone had seen them. The second time, Bailey and Smith went to Hall's house to lure him out of the house so they could shoot him, but Hall refused to come out. During the final attempt, Norberg, Smith, Bailey, and Bailey's brother went to Hall's house during the night and Smith entered through a bathroom window. Smith fired a shot at Hall and shut Hall's thumb in a door, cutting off the tip.[4]
¶ 9 In 1989, a jury acquitted Stein of the charges related to Lund's murder, but it convicted him of the three counts of attempted first degree murder and one count of first degree burglary related to the Hall incidents. Stein appealed, but his appellate attorney failed to perfect the record, and we dismissed the appeal in 1991.
¶ 10 In 1996, the federal district court ordered his appeal reinstated, ruling that his appellate counsel was ineffective and that the court reporter, county clerk, and prosecutor, as court officers, contributed to the delay. We reversed Stein's convictions because of error in the accomplice instructions. State v. Stein (Stein I), 94 Wash.App. 616, 617, 972 P.2d 505 (1999) (published in part), aff'd, 144 Wash.2d 236, 27 P.3d 184 (2001). The Washington Supreme Court affirmed. State v. Stein (Stein II), 144 Wash.2d 236, 238, 27 P.3d 184 (2001).
¶ 11 In 2003, the trial court, after a hearing under CrR 8.3, declined to dismiss the charges against Stein, ruling that the delay did not prejudice Stein's right to a fair trial on remand.[5] A jury again convicted Stein of burglary and three counts of attempted murder. The trial court then sentenced Stein to three terms of 220 months, to run consecutively, for the three attempted murders, and 36 months for the burglary, to run concurrently, for a total sentence of 660 months.

ANALYSIS
I. Dismissal of Charges under CrR 8.3(b)
¶ 12 Stein first contends that the trial court should have dismissed the charges *22 against him under CrR 8.3(b) because of governmental misconduct.
¶ 13 CrR 8.3(b) provides:
The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.
Stein bears the burden of proving both misconduct and prejudice by a preponderance of the evidence. State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003) (citing State v. Michielli, 132 Wash.2d 229, 239-40, 937 P.2d 587 (1997)). Dismissal is an extraordinary remedy. Rohrich, 149 Wash.2d at 653, 71 P.3d 638 (citing State v. Baker, 78 Wash.2d 327, 332-33, 474 P.2d 254 (1970)).
¶ 14 We review a trial court's decision on a motion to dismiss under CrR 8.3(b) for an abuse of discretion. Rohrich, 149 Wash.2d at 654, 71 P.3d 638. A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997).
A. CrR 8.3(b) Proceedings
¶ 15 The Supreme Court concluded its opinion in Stein II by stating: "We remand for a new trial, leaving to the sound discretion of the trial court the question of whether further relief is appropriate under CrR 8.3, or other theories raised in Stein's cross petition." Stein II, 144 Wash.2d at 248, 27 P.3d 184.
¶ 16 The trial court held a CrR 8.3 hearing from September 2002 to April 2003, with continuances. Numerous witnesses testified, including Stein's former attorneys from his first criminal trial and various civil matters; judges who presided over Stein's criminal trial and civil matters; employees of the Clark County clerk's office; and members of Stein's family. Professor John Strait testified on Stein's behalf as an expert on professional responsibility, and doctors Stan Abrams and Caleb Burns gave expert opinions on Stein's memory functions. Judge Roger Bennett, currently on the Clark County bench but the lead prosecutor in the original case, testified about his role as prosecutor and his involvement in the case after the Supreme Court remanded the case for a new trial.
¶ 17 The trial court ruled that it was bound by the federal district court's order that Stein's original appeal was dismissed and delayed due in part to governmental misconduct. The court also ruled that it could not consider issues that we resolved against Stein, including his claims that he was denied counsel of choice and a speedy trial. Thus, the court considered only whether Stein had shown that the governmental misconduct prejudiced him.
¶ 18 The trial court found that Stein had not shown that the delay had impaired his memory of the events surrounding the charges or caused his financial loss; that transcripts from the previous trial could be used to refresh witnesses' memories, to impeach witnesses, or as a substitute for live testimony; and that a witness's decision to change his testimony was irrelevant to the issue of actual prejudice. The court also found that Judge Bennett's activities after the Supreme Court's remand did not constitute governmental misconduct or prejudice Stein. Finally, in denying Stein's motion to dismiss, the court concluded that the mere passage of time was insufficient to show actual prejudice.
B. Collateral Estoppel and Law of the Case
¶ 19 Stein maintains that the trial court erroneously applied the doctrines of collateral estoppel and law of the case to bar his claims of right to counsel of choice and right to a speedy trial as additional reasons to dismiss the charges against him. He argues that our previous decision was not a final judgment on the merits because the Supreme Court's decision superseded it when that court granted review. Thus, he maintains, the trial court was not barred from reconsidering issues we had previously decided.
¶ 20 Collateral estoppel precludes relitigation of an issue that was raised and resolved in an earlier action. State v. Harrison, 148 Wash.2d 550, 560-61, 61 P.3d 1104 *23 (2003). Collateral estoppel applies where (1) the issue decided in the earlier adjudication is identical to the current issue, (2) the earlier adjudication ended with a final judgment on the merits, (3) the party to be estopped was a party to or in privity with a party to the earlier adjudication, and (4) barring relitigation of the issue will not work an injustice. Harrison, 148 Wash.2d at 561, 61 P.3d 1104 (citing Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 262-63, 956 P.2d 312 (1998)).
¶ 21 The federal district court ruled that governmental misconduct delayed Stein's appeal. And in holding that Stein was estopped from challenging the federal court's remedy, we explained that the federal court judgment satisfied all the collateral estoppel elements. Stein I, noted at 94 Wash.App. 616, slip op. at 35-36. Thus, the trial court properly considered itself bound by the federal court's finding of governmental misconduct in the delay of Stein's appeal.
¶ 22 The trial court also ruled that it was bound by our decision on those issues we had considered. Under the law of the case doctrine, an appellate court's decision is binding on further proceedings in the trial court on remand. State v. Strauss, 119 Wash.2d 401, 412-13, 832 P.2d 78 (1992). This doctrine promotes "the finality and efficiency of the judicial process by `protecting against the agitation of settled issues.'" Harrison, 148 Wash.2d at 562, 61 P.3d 1104 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).
¶ 23 In our first opinion, we considered and rejected Stein's claims that he was denied counsel of choice and a speedy trial. Stein I, noted at 94 Wash.App. 616, slip op. 17-18, 30-32. The Supreme Court did not alter our decision on either issue.
¶ 24 Yet Stein maintains that the Supreme Court granted review on the counsel of choice and speedy trial issues and then remanded for consideration of these issues. The Supreme Court, however, did not consider these issues in its opinion; it decided only the accomplice instruction issue. Stein II, 144 Wash.2d at 238, 27 P.3d 184. An appellate court's decision supersedes a lower court decision only on the issues the appellate court decides. Strauss, 119 Wash.2d at 412, 832 P.2d 78. Thus, our opinion remains the law of this case on these issues and the trial court did not abuse its discretion by refusing to consider Stein's claims of denial of the right to counsel of choice and to a speedy trial.
C. Prejudice from Appellate Delay
1. Inherent Prejudice
¶ 25 Stein next contends that prejudice inheres in his delayed appeal, mandating dismissal of his convictions.[6] He argues that, under the plain language of Article 1, sections 10 and 22 of the Washington Constitution,[7] unnecessary delay in a criminal prosecution is a constitutional violation. Analogizing to the speedy trial context, Stein reasons that his delayed appeal warrants dismissal of all charges regardless of the strength of the State's case.
¶ 26 But our Supreme Court has held that a defendant seeking dismissal under CrR 8.3 must show actual prejudice resulting from a delay in filing charges; the mere possibility of prejudice is insufficient. Rohrich, 149 Wash.2d at 657-58, 71 P.3d 638. The Rohrich court found it "incongruous" that a defendant could obtain dismissal of a charge under CrR 8.3 without showing actual prejudice resulting from governmental misconduct but must show a "substantial likelihood" of prejudice when seeking reversal for prosecutorial misconduct. Rohrich, 149 Wash.2d at 657-58, 71 P.3d 638. That dismissal under CrR 8.3 is an extraordinary remedy also counsels against allowing dismissal based on *24 speculative prejudice. Rohrich, 149 Wash.2d at 658, 71 P.3d 638.
¶ 27 Here, the governmental misconduct resulted in delay of Stein's appeal, not delay in charging him, but the Rohrich court's rationale equally applies. See Rohrich, 149 Wash.2d at 657-58, 71 P.3d 638. Thus, the trial court properly considered whether Stein had shown actual prejudice attributable to the delay.
2. Actual Prejudice
¶ 28 Stein contends that his own and other witnesses' dimmed memories prejudiced his right to a fair trial. He also argues that he suffered prejudice from the delay because Bailey, who testified for the State in Stein's first trial but then testified on behalf of Stein in the civil wrongful death and criminal profiteering action against him,[8] had changed his testimony back to the State's side by the time of the retrial.
¶ 29 In State v. Haga, Division One of this court twice declined to dismiss murder charges filed five years after the deaths occurred, holding that the defendant did not show actual prejudice even though he showed that witnesses' memories had dimmed and several witnesses and certain pieces of evidence were no longer available. State v. Haga (Haga I), 8 Wash.App. 481, 486-89, 507 P.2d 159 (1973), appeal after remand at 13 Wash.App. 630, 536 P.2d 648 (1975). The court noted that the trial court is in the best position to evaluate whether the delay affected the defendant's ability to defend against the charges. State v. Haga (Haga II), 13 Wash.App. 630, 634, 536 P.2d 648 (1975). And the possibility of prejudicial delay lessens in the retrial context where the defendant can use trial transcripts to refresh witnesses' memories and can introduce former testimony in the event witnesses become unavailable. United States v. Mohawk, 20 F.3d 1480, 1488 (9th Cir.1994).
¶ 30 The trial court found that Stein presented no direct evidence that any witness suffered from a dissipated memory or that Stein was prejudiced by witnesses' dimmed memories. It also found that Stein's own memory function had not deteriorated since 1989.[9] The trial court noted that the remedy for any prejudice resulting from unavailability of witnesses would be to exclude their prior testimony, not to dismiss the charges. The trial court also refused to speculate on what Bailey's testimony would have been had the case gone to retrial six years earlier than it did.
¶ 31 Here, although many witnesses had faded memories of the events surrounding the charges, Stein had transcripts from his previous trial to refresh their memories or impeach them. And the passage of time could, and undeniably did, weaken the State's case as much as it did Stein's. See Haga II, 13 Wash.App. at 634, 536 P.2d 648. For example, the changes in Bailey's testimony made him a far less credible witness for the State. Moreover, the court ultimately excluded the prior testimony of Dr. Peter Lusky, who was deceased at the time of the retrial and who had testified in the wrongful death and criminal profiteering action that Stein had asked him if he knew where to hire a hit man.
¶ 32 As the Rohrich court noted, neither the trial court nor an appellate court can screen the credibility of witnesses with potentially faded memories; that remains an issue for the trier of fact. Rohrich, 149 Wash.2d at 659, 71 P.3d 638. The same *25 holds true for witnesses who have damaged their credibility by changing their testimony. The trial court considered the effects of the intervening years on Stein's ability to defend himself against the charges and did not abuse its discretion in ruling that actual prejudice did not exist.
D. Prejudice From Judge Bennett's Actions
¶ 33 Stein also argues that governmental misconduct after the Supreme Court's remand for retrial prejudiced him and thus requires dismissal of the charges. He maintains that Judge Bennett participated in the State's conference with the "key prosecution witness," Bailey, and that in doing so, Judge Bennett violated the Canons of Judicial Conduct; moreover, according to Stein, the State's attorneys violated the Rules of Professional Conduct by asking Judge Bennett to help. Br. of Appellant at 21-22. Stein contends that this conduct prejudiced him because Bailey was reluctant to testify and may not have done so had Judge Bennett not intervened.
¶ 34 Judge Bennett testified that he participated in a strategy meeting with members of the Clark County prosecutor's office after the Supreme Court remanded the case for retrial. He also attended a meeting with Bailey and the assistant attorney general who represented the State when the Clark County prosecutor recused his office. He went to that meeting as an "observer" because he was familiar with Bailey's previous testimony and he could tell the State's attorney if Bailey was providing false or incomplete information.
¶ 35 Although a Clark County detective testified that Judge Bennett went to the meeting to "get [Bailey] back on board," Judge Bennett testified that he did not tell Bailey how to testify, other than truthfully, or offer him any inducements to testify. 5 Report of Proceedings (RP) at 765. Bailey testified that both Judge Bennett and the State's attorney told him he could be jailed if he did not testify. Bailey had also previously sought favors from Judge Bennett, although Judge Bennett did not do any favors for him.[10]
¶ 36 Stein's expert in professional responsibility, Professor John Strait, opined that, while Judge Bennett's activities in advising the prosecutor's office on strategy were ethical, he violated the Canons of Judicial Conduct by using his status as a judge to benefit others when he participated in the State's meeting with Bailey. In addition, Strait opined that the State's attorneys violated the Rules of Professional Conduct by encouraging Judge Bennett to violate his ethical requirements.
¶ 37 The trial court found that Judge Bennett's actions did not amount to governmental misconduct and did not prejudice the defense.
¶ 38 Regardless of whether Judge Bennett's and the State's actions rose to the level of governmental misconduct, Stein must show that they prejudiced him. Rohrich, 149 Wash.2d at 653, 71 P.3d 638. Stein's speculation that Bailey would not have testified but for Judge Bennett's urging is unfounded, given that the State could compel Bailey to testify with a subpoena. And Bailey testified that his original testimony against Stein was truthful and the later testimony in Stein's favor was untruthful. The trial court was in the best position to evaluate Bailey's credibility as to the truthfulness of his testimony and the reasons he changed it. State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004). And it was within the trial court's discretion to determine that presenting truthful testimony, no matter how obtained, did not prejudice Stein's right to a fair trial.
¶ 39 The trial court did not abuse its discretion when it concluded that any misconduct on the part of Judge Bennett or the State's attorneys on remand did not merit dismissal of the charges against Stein.

II. Collateral Estoppel: Murder of Thelma Lund
¶ 40 Stein argues that the collateral estoppel component of the double jeopardy *26 clause precluded the State from introducing evidence that he was involved in Lund's murder because the first jury acquitted him of all charges related to Lund.[11]
¶ 41 The double jeopardy clauses of the United States and Washington constitutions provide the same protection against multiple punishments for the same offense and subsequent prosecution for the same offense after acquittal or conviction.[12]State v. Eggleston, 129 Wash.App. 418, 426, 118 P.3d 959 (2005) (quoting State v. Graham, 153 Wash.2d 400, 404, 103 P.3d 1238 (2005)), review granted, 160 Wash.2d 1005, 158 P.3d 615 (2007). We interpret the state double jeopardy clause in the same manner the United States Supreme Court interprets the federal provision. Eggleston, 129 Wash.App. at 426, 118 P.3d 959.
A. Relitigation of Ultimate Issue
¶ 42 Collateral estoppel is a component of the constitutional protection against double jeopardy. Ashe v. Swenson, 397 U.S. 436, 445-46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Collateral estoppel means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Ashe, 397 U.S. at 443, 90 S.Ct. 1189. Thus, where a jury in acquitting the defendant necessarily found that the State failed to prove a fact essential to convict the defendant, the State cannot relitigate the same fact in a later proceeding against the defendant. Eggleston, 129 Wash.App. at 427, 118 P.3d 959. For example, where the government claimed that the defendant was one of several masked men who robbed one of a group of six men and the jury, in acquitting the defendant, necessarily found that the government failed to prove he was one of the robbers, the government could not retry the defendant for robbing another member of the group. Ashe, 397 U.S. at 446-47, 90 S.Ct. 1189.
¶ 43 But collateral estoppel does not always bar the later use of evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted. For example, where the defendant was charged with armed bank robbery, the government could use evidence that the defendant, near the time of the robbery, entered a woman's home armed with a pistol similar to the weapon used in the bank robbery even though a jury had acquitted the defendant of the home invasion charges. See Dowling v. United States, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). The court explained that at the second trial, the government did not have to prove beyond a reasonable doubt that the defendant was the man who entered the home; rather, similar act evidence is admissible under ER 404(b) if the jury can "`reasonably conclude that the act occurred and that the defendant was the actor.'" Dowling, 493 U.S. at 348, 110 S.Ct. 668 (quoting Huddleston v. United States, 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). The second jury could reasonably find by a preponderance of the evidence that Dowling entered the woman's home even if the first jury had concluded that the government failed to prove beyond a reasonable doubt that he committed the crimes charged in the first trial.[13]Dowling, 493 U.S. at 348-49, 110 S.Ct. 668.
¶ 44 We review the preclusive effect of a jury's verdict de novo. Eggleston, 129 Wash.App. at 427, 118 P.3d 959. Here, as in Dowling, "the prior acquittal did not determine an ultimate issue in the present case." Dowling, 493 U.S. at 348, 110 S.Ct. *27 668. Stein's participation in the Lund murder was not an ultimate issue in the attempted murders of Hall. The State sought to admit evidence of Lund's murder under ER 404(b) as evidence that Stein was part of an ongoing conspiracy to eliminate people he saw as obstacles to his prospective wealth. And to get the evidence admitted, the State did not have to prove beyond a reasonable doubt that Stein conspired to murder Lund; rather, the evidence was admissible if the trial court found by a preponderance of the evidence that Stein had probably conspired to murder Lund.[14]State v. Kilgore, 147 Wash.2d 288, 292, 53 P.3d 974 (2002). Accordingly, collateral estoppel does not preclude use of the evidence. Dowling, 493 U.S. at 349, 110 S.Ct. 668.
B. Fundamental Fairness
¶ 45 Stein further argues that due process principles of "fundamental fairness" bar the State from using evidence that he participated in the Lund murder.
¶ 46 The Dowling court considered whether the admission of similar act evidence in that case was "so extremely unfair that its admission violates `fundamental conceptions of justice'" and concluded that it did not. Dowling, 493 U.S. at 352, 110 S.Ct. 668 (quoting United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)). The court rejected Dowling's claims that such evidence was unreliable, that it created a risk that the jury would convict him based on inferences it drew from the acquitted conduct, that it could lead to inconsistent jury verdicts, and that it forced him to defend himself against charges of which he had been acquitted. Dowling, 493 U.S. at 353-54, 110 S.Ct. 668.
¶ 47 Stein complains that the trial court did not advise the jury that the first jury acquitted him of Lund's murder. The Dowling court rested its decision in part on the trial court's instructions informing the jury that the defendant had been acquitted of the crimes charged in the first trial and emphasizing the limited purpose of the testimony. Dowling, 493 U.S. at 345-46, 353, 110 S.Ct. 668. Here, the trial court gave a preliminary instruction to the jury not to speculate on the outcome of prior related proceedings. But the trial court was concerned that if it allowed references to Stein's acquittal of Lund's murder, in fairness it would have to allow the State to bring in the fact that the civil wrongful death/criminal profiteering jury found Stein responsible for Lund's murder. Ultimately, Stein and the State agreed on the preliminary instruction given.[15]See State v. Henderson, 114 Wash.2d 867, 870, 792 P.2d 514 (1990) (party may not request an instruction and later complain on appeal that it was given). The trial court did not err in balancing Stein's interest in showing the criminal jury's acquittal against the State's interest in showing the civil jury's finding that he was liable for Lund's death.[16]
¶ 48 Stein also maintains that because the jury might infer his guilt on the current charges from evidence he participated in Lund's death, he had to defend himself against the Lund charges a second time. But the Dowling court rejected the same arguments because the trial court can exclude potentially prejudicial evidence[17] and because the double jeopardy clause amply protects against the State forcing defendants to relitigate charges they have been acquitted of. Dowling, 493 U.S. at 354, 110 S.Ct. *28 668. The Dowling court declined to extend due process protections beyond those the double jeopardy clause already affords. Dowling, 493 U.S. at 354, 110 S.Ct. 668.
¶ 49 The trial court did not violate either the double jeopardy clause or due process in admitting evidence relating to Lund's murder.
III. ER 404(b) Evidence of Other Crimes
¶ 50 Stein contends that the trial court erred in admitting evidence of Lund's murder and Stein's plans to kill Judge Lodge and blow up the Clark County courthouse.
¶ 51 ER 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 52 When the State seeks to admit evidence of uncharged crimes, the trial court must (1) find by a preponderance of the evidence that the uncharged acts probably occurred, (2) identify the purpose for which the evidence is admitted, (3) find that the evidence is relevant to that purpose, and (4) balance the probative value of the evidence against its prejudicial effect. Kilgore, 147 Wash.2d at 292, 53 P.3d 974.
¶ 53 We review a trial court's decision to admit evidence for an abuse of discretion. State v. Vreen, 143 Wash.2d 923, 932, 26 P.3d 236 (2001). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State v. Wade, 138 Wash.2d 460, 464, 979 P.2d 850 (1999) (citing State ex rel. Carroll v. Junker, 79 Wash.2d 12, 482 P.2d 775 (1971)).
A. Evidence of Lund's Murder
1. Stein's Involvement
¶ 54 Stein first asserts that the trial court did not find that he was involved in the Lund murder by a preponderance of the evidence.
¶ 55 The State presented a detailed offer of proof outlining Bailey's and Norberg's guilty pleas implicating Stein and the jury verdict in the wrongful death/criminal profiteering trial finding by a preponderance of the evidence that Stein was responsible for Lund's murder. Stein argued that he was not involved in the Lund murder.[18] The trial court orally ruled that "I'm satisfied that the allegations regarding the Lund homicide and the description of the [sic] or at least the offer of proof by the State does allow for 404(b) evidence." 14 RP at 2280. And it clarified that the wrongful death/criminal profiteering jury found that Stein was responsible for Lund's death by a preponderance of the evidence.[19]
¶ 56 A trial court may determine that uncharged crimes probably occurred based solely on the State's offer of proof. Kilgore, 147 Wash.2d at 295, 53 P.3d 974. And where a trial court rules on the admissibility of ER 404(b) evidence immediately after both parties have argued the matter and the court clearly agrees with one side, an appellate court can excuse the trial court's lack of explicit findings. See State v. Pirtle, 127 Wash.2d 628, 650, 904 P.2d 245 (1995). Although the trial court did not explicitly state that it found by a preponderance of the evidence that Stein committed the crimes, it implied as much by referring to the State's offer of proof and the wrongful death/criminal profiteering jury verdict. This record is sufficient to show that the trial court found by a preponderance of the evidence that Stein was responsible for the Lund murder.
*29 2. Effect of Acquittal
¶ 57 Stein next argues that the trial court erred by failing to consider his acquittal of Lund's murder when weighing the probative value of the evidence against its prejudicial effect. He maintains that the acquittal makes evidence of Lund's murder less probative and increases the prejudicial effect.
¶ 58 The trial court must exclude even relevant evidence when the danger of unfair prejudice substantially outweighs its probative value. ER 403. To ensure thoughtful consideration and facilitate appellate review of an ER 404(b) ruling, the trial court must make a record of its balancing of the probative value of evidence versus its potential prejudice. State v. Jackson, 102 Wash.2d 689, 694, 689 P.2d 76 (1984). A trial court has wide discretion in balancing probative value versus prejudice. Stenson, 132 Wash.2d at 702, 940 P.2d 1239.
¶ 59 Here, in conducting its balancing analysis, the trial court said:
I'm also satisfied that it is probative, and the probative value is not substantially outweighed by the . . . unfair prejudice. The reason for that is that, I think that it's a plan, and the intent formed is to do away with those involved in the estate issues, and . . . that ongoing relationship with [Stein's] father.
The matters that go to motive and intent have to be proven by the State, and whatever goes to [Stein's] state of mind at the time is relevant and admissible, it's not unfair to admit those.
. . .
I would also note that jurors are certainly capable of separating the two. Your first jury trial, they separated the two, and acquitted on the allegations regarding Ms. Lund, and found you guilty of the ones involving Mr. Hall. But, so I don't think that there's unfair prejudice. . . .
14 RP at 2281.
¶ 60 Contrary to Stein's assertions, the trial court did consider his acquittal and decided that it did not make the evidence unfairly prejudicial because the jury could separate that crime from the one currently charged.
¶ 61 Moreover, neither of the cases Stein cites addresses the rather unique situation here, where Stein was acquitted of the act in a criminal trial but found liable in a civil trial. See United States v. Schwab, 886 F.2d 509, 513 (2nd Cir.1989) (finding abuse of discretion where trial court admitted evidence of one charge of which defendant had been acquitted and one charge that had been dismissed); United States v. Phillips, 401 F.2d 301, 306 (7th Cir.1968) (finding abuse of discretion where trial court did not consider effect of defendant's acquittal when admitting evidence of crime of which defendant had been acquitted). Although Stein may be correct that the acquittal reduces the probative value of the evidence, the wrongful death/criminal profiteering verdict finding him liable increases it.
¶ 62 The trial court did not abuse its discretion in balancing the probative value of the evidence of Lund's murder against its potential prejudicial effect.
3. Scope of Evidence Admitted
¶ 63 Stein maintains that even if the trial court properly admitted evidence of Lund's murder, it should have limited the nature and amount of evidence admitted.
¶ 64 The State presented the testimony of Lund's daughter, who described Lund's life and family and her own final visit with her mother; Lund's neighbor, who described how she discovered Lund's body; a law enforcement officer who responded to the scene of the murder; the forensic pathologist who performed the autopsy on Lund; and Bailey, who described how the murder took place. The trial court also admitted crime scene photos of Lund's house, although none showed the bathroom where Lund was murdered.
¶ 65 The relevance of much of this evidence to the attempted murders of Hall is questionable. But Stein did not object to any of it. A party must specifically object to evidence presented at trial to preserve the matter for appellate review. RAP 2.5(a); State v. Perez-Cervantes, 141 *30 Wash.2d 468, 482, 6 P.3d 1160 (2000). A party's failure to object can waive an error even where there has been a pretrial ruling on the admissibility of evidence. State v. Weber, 159 Wash.2d 252, 272, 149 P.3d 646 (2006) (failure to object to presentation of evidence already excluded by pretrial order waives any error unless an objection could not have cured the prejudicial impact of the evidence). Even though the trial court had already ruled that evidence of Lund's murder was admissible, by failing to object to the scope of the evidence as he does now, Stein deprived the trial court of the opportunity to limit such evidence. Accordingly, we decline to consider the argument.
B. Evidence of Other Uncharged Crimes
¶ 66 Stein contends that the trial court erred in admitting evidence of Stein's threats to kill Judge Lodge and to blow up the Clark County courthouse.
¶ 67 Stein moved to exclude evidence of these alleged crimes. Finding that the evidence was relevant to Stein's involvement in the overall conspiracy, the trial court denied Stein's motion. Bailey testified about a plan to blow up the Clark County courthouse and to kill a judge, but he did not name Judge Lodge.
¶ 68 We affirmed the trial court's admission of this evidence in Stein's first trial, finding that, because it was probative of Stein's involvement in the charged conspiracy, its admission did not violate ER 404(b). Stein I, noted at 94 Wash.App. 616, slip op. 24. Stein maintains that this decision does not govern the current case because the State did not charge him with any conspiracy here.
¶ 69 But the State may prove prior bad acts by a preponderance of the evidence. Kilgore, 147 Wash.2d at 292, 53 P.3d 974. And an acquittal on a conspiracy charge establishes only that the State failed to prove the existence of a conspiracy beyond a reasonable doubt. State v. Miller, 35 Wash. App. 567, 571-72, 668 P.2d 606 (1983). The State's theory of the case in Stein's second trial was the same as in the first: that the attempts on Hall's life were part of a single, overarching conspiracy to remove those Stein believed were standing in the way of his inheritance, including Lund, Hall, and Judge Lodge. The trial court found that the evidence was relevant to prove Stein's role in this conspiracy and concluded that it was not unfairly prejudicial. The trial court did not abuse its discretion in admitting Bailey's testimony.
C. Limiting Instruction
¶ 70 Stein also argues that the trial court should have instructed the jury to consider the ER 404(b) evidence only for the limited purposes for which it was admitted. Although Stein would have been entitled to such an instruction had he requested it, ER 105,[20] he failed to do so. A party who fails to ask for a limiting instruction waives any argument on appeal that the trial court should have given the instruction. State v. Newbern, 95 Wash.App. 277, 295-96, 975 P.2d 1041 (1999) (citing Lockwood v. AC & S, Inc., 109 Wash.2d 235, 255, 744 P.2d 605 (1987)). Thus, Stein has waived his right to complain about the trial court's omission.
¶ 71 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] RAP 10.10.
[2] Other targets allegedly included Clark County Superior Court Judge Thomas Lodge, who presided over the real estate contract litigation, and Dale Haagen, one of the purchasers of Nicholas's real estate. Haagen also had initiated litigation related to the real estate sales contract.
[3] Stradley and Denney testified in the first trial, but because they were unavailable to testify at the second trial, the State read their transcribed testimony to the jury.
[4] Norberg pleaded guilty to conspiracy to commit second degree murder. Bailey pleaded guilty as an accomplice to first degree murder and first degree attempted murder. Smith pleaded guilty to conspiracy to commit first degree murder.
[5] We terminated review of this ruling when Stein failed to prosecute his motion for discretionary review.
[6] Although nearly 20 years have now passed since Stein's original conviction, the relevant delay here, from our dismissal of Stein's direct appeal in 1991, to the time the federal court reinstated it in 1996, was only 5 years.
[7] Article I, section 10 provides: "Justice in all cases shall be administered openly, and without unnecessary delay." Article I, section 22 provides, in part: "In criminal prosecutions the accused shall have the right to . . . have a speedy public trial by an impartial jury . . . and the right to appeal in all cases."
[8] In 1989, Lund's estate filed a wrongful death action against Stein and Norberg and the State filed a criminal profiteering action against Stein, Norberg, Bailey, and Smith. Winchester v. Stein, 135 Wash.2d 835, 840, 959 P.2d 1077 (1998). In a consolidated action, the jury found in favor of Lund's estate and the State, and the Supreme Court upheld the verdict. Winchester, 135 Wash.2d at 841, 861-62, 959 P.2d 1077.
[9] The trial court gave greater weight to the testimony of the State's expert, Dr. Stan Abrams, who testified that although Stein suffers deficits in his short-term memory, his memory function has remained stable since Dr. Abrams's first evaluation in 1989. The trial court gave less weight to the testimony of Stein's expert, Dr. Caleb Burns, finding that Dr. Burns, who had treated Stein for many years, had become an advocate for Stein. The trial court also considered the interest Stein's family members had in the outcome of the proceeding when evaluating their testimony about Stein's decreased memory function.
[10] Bailey asked Judge Bennett for assistance in petitioning for clemency, obtaining work as an informant, and in finding his daughter, who had been adopted while he was in prison. Judge Bennett did not assist Bailey.
[11] Stein did not raise this objection before the trial court. A defendant may, however, raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a). A violation of the collateral estoppel component of the double jeopardy is a manifest constitutional error. State v. Kassahun, 78 Wash.App. 938, 948, 900 P.2d 1109 (1995). Thus, we consider the issue.
[12] The federal constitution provides: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb. . . ." U.S. Const. amend. V. The state constitution provides: "No person shall . . . be twice put in jeopardy for the same offense." Wash. Const. art. I, § 9.
[13] Such a conclusion was easy to reach in Dowling because the defendant admitted entering the woman's home but denied any criminal intent. Dowling, 493 U.S. at 351, 110 S.Ct. 668.
[14] The jury in the civil wrongful death/criminal profiteering trial found by a preponderance of the evidence that Stein was in fact responsible for Lund's death.
[15] Stein maintains that in proposing this instruction, he did not agree to admission of the evidence. Stein objected to the admission of any evidence relating to the Lund murder under ER 404(b) and, once the trial court ruled it was admissible, merely proposed this instruction as the proper way to deal with the conflicting prior proceedings. He did not thereby waive his ER 404(b) objection.
[16] Stein also complains that the trial court did not repeat the instruction at the end of the trial as it proposed to do. But, by failing to ask the court to repeat the instruction, Stein cannot now complain that the court failed to give it. State v. Scott, 93 Wash.2d 7, 14, 604 P.2d 943 (1980).
[17] We address Stein's claim that the evidence related to Lund was unduly prejudicial in the following section, as part of the ER 404(b) analysis.
[18] Stein was acting pro se at this hearing.
[19] The wrongful death/criminal profiteering jury verdict represents a higher standard of proof than is necessary for ER 404(b) evidence. ER 404(b) evidence is admissible if the court finds by a preponderance of the evidence that the defendant "probably" committed the uncharged acts, Kilgore, 147 Wash.2d at 292, 53 P.3d 974; the wrongful death/criminal profiteering jury found by a preponderance of the evidence that Stein actually did solicit Lund's murder.
[20] ER 105 provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."