FILED
COURT OF APPEALS
DIVISION II

2013 SEP 24 AM 9: 24

STATE OF WASHINGTON

DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42538-6-II |
| Respondent, | |
| v. | |
| CHARLES TEWEE, | PART PUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Charles Tewee appeals his first degree child molestation conviction following a jury trial and his sentence. Tewee argues that (1) the trial court improperly included Tewee's foreign conviction in calculating his offender score; (2) the police detective's testimony violated the "hue and cry" doctrine, (3) the trial court abused its discretion in admitting hearsay statements from the victim's counselor under the medical treatment exception in ER 803(a)(4), and (4) the State produced insufficient evidence to support the abuse of trust aggravating sentencing factor. In his statement of additional grounds (SAG), Tewee also argues that the trial court erroneously calculated his offender score without proof of his prior convictions and that the victim's testimony was not credible.

In the published portion of this opinion, we hold that the trial court improperly found Tewee's foreign conviction comparable to a Washington conviction. In the unpublished portion of this opinion we hold that (1) Tewee failed to preserve for review the "hue and cry" and medical treatment hearsay arguments; (2) credibility issues are for the jury; and (3) the State

produced sufficient evidence to support the abuse of trust aggravating factor and the existence of the prior convictions. Accordingly, we affirm the conviction, reverse in part, and remand for resentencing.

## COMPARABILITY OF OREGON CONVICTION UNDER FORMER OREGON REVISED STATUTE (ORS) 164.135 (2002)

In September 2010, the State charged Tewee with first degree child rape and first degree child molestation. The jury acquitted Tewee of first degree child rape. But it found him guilty of first degree child molestation and also found that he misused a trust relationship to gain access to the victim, AB.[1] Before sentencing, the State filed a memorandum regarding Tewee's offender score and attached copies of court records of Tewee's prior convictions and a declaration of criminal history listing Tewee's prior convictions. Tewee did not stipulate to prior convictions or to an offender score. The trial court counted offender score points for several convictions and found Tewee's offender score to be nine. Also at sentencing, the trial court found Tewee's Oregon conviction for unauthorized vehicle use, former ORS 164.135, comparable to Washington's taking a motor vehicle without permission offense, and entered an exceptional sentence. Former RCW 9A.56.070(2)(a) (2002). Tewee appeals.

Tewee argues that the trial court erred in finding that his Oregon conviction for unauthorized vehicle use was comparable to the Washington crime of taking a motor vehicle without permission. We hold the two offenses are not legally nor factually comparable, because the Oregon conviction involved a "permissive" taking that is not recognized in Washington. We remand for resentencing.

---

[1] We use initials to protect sexual assault victims' privacy.

No. 42538-6-II

## I. STANDARD OF REVIEW

We review a sentencing court's calculation of an offender score de novo. *State v. Mutch*, 171 Wn.2d 646, 653, 254 P.3d 803 (2011). Where a defendant's criminal history includes out-of-state convictions, the court must classify the convictions "according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3);[2] *State v. Ford*, 137 Wn.2d 472, 479, 973 P.2d 452 (1999) (quoting *State v. Wiley*, 124 Wn.2d 679, 683, 880 P.2d 983 (1994)). We also review this comparability determination de novo. *State v. Werneth*, 147 Wn. App. 549, 552, 197 P.3d 1195 (2008).

## II. DISCUSSION

We employ a two-part test to determine a foreign offense's comparability. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). First, we determine whether the foreign offense is legally comparable—whether the foreign offense's elements are substantially similar to the Washington offense's elements. *Thiefault*, 160 Wn.2d at 415. If so, the analysis stops here. But if the foreign offense's elements are broader or different than Washington's elements, precluding legal comparability, we determine whether the offense is factually comparable. *Thiefault*, 160 Wn.2d at 415. To do so, we determine whether the conduct underlying the foreign offense would have violated the comparable Washington statute. *Thiefault*, 160 Wn.2d 409, 415, *Thiefault*, 160 Wn.2d at 415. In making our factual comparison, we may rely on facts in the

---

[2] The statute has been amended several times since 2010, but the applicable language remains the same.

foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt. *Thiefault*, 160 Wn.2d at 415. We may review the defendant's conduct, as evidenced by the facts alleged in the charging document and proved beyond a reasonable doubt, to determine whether his conduct would have violated the comparable Washington statute. *See State v. Duke*, 77 Wn. App. 532, 535, 892 P.2d 120 (1995).

Tewee's foreign offense occurred in December 2002. In 2002, in Washington, a person committed second degree taking of a motor vehicle without permission when:

> [W]ithout the permission of the owner or person entitled to possession, [the person] intentionally takes or drives away any automobile . . . that is the property of another, or he or she voluntarily rides in or upon the automobile . . . with knowledge of the fact that the automobile . . . was unlawfully taken.

Former RCW 9A.56.070(2)(a) (2002).

In 2002, in Oregon, a person committed an unauthorized use of a motor vehicle when

> (a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle . . . without consent of the owner; or
> (b) *Having custody of a vehicle . . . pursuant to an agreement* between the person or another and the owner thereof whereby the person or another is to perform for compensation a specific service for the owner . . . the person intentionally uses or operates it, without consent of the owner . . . or
> (c) *Having custody of a vehicle . . . pursuant to an agreement* with the owner thereof whereby such vehicle . . . is to be returned to the owner at a specified time, the person knowingly retains or withholds possession thereof without consent of the owner for so lengthy a period beyond the specified time.

Former ORS 164.135 (2002) (emphasis added).

We first compare the statutes' elements to determine whether the statutes are legally comparable. In Washington, a person commits the offense by (1) intentionally taking, driving away, or voluntarily and knowingly riding in (2) any automobile (3) that is the property of another (4) without the owner's permission. Former RCW 9A.56.070(2)(a).

In Oregon, a person commits the offense under former ORS 164.135(a) by (1) taking, operating, exercising control over, riding in, or otherwise using (2) another's vehicle (3) without the owner's consent. A person can also commit the offense under former ORS 164.135(b) by (1) intentionally using or operating (2) a vehicle (3) in his custody pursuant to an agreement with the owner to perform a specific compensated service (4) without the owner's consent. Also, a person can commit the offense under former ORS 164.135(c) by (1) knowingly retaining or withholding possession of (2) a vehicle (3) longer than the agreed upon time (4) when in his custody pursuant to an agreement to return it at a specified time (5) without the owner's consent. Thus, Oregon's elements are both broader and different than Washington's elements because Oregon's statute specifies the effect of agreements with the owner.

Therefore, we must perform a factual inquiry to determine whether Tewee's conduct leading to his Oregon conviction would have violated Washington's statute. According to the information filed, the Oregon prosecutor charged Tewee with "unlawfully and knowingly tak[ing] and operat[ing] a vehicle, to-wit: a Toyota 4-Runner, without the consent of the owner . . . contrary to the statutes in such cases made and provided." Clerk's Papers at 466. The indictment provided that Tewee and the vehicle's owner agreed that Tewee would return the vehicle but that Tewee retained possession of the vehicle for at least two days longer without the owner's consent. In his petition to enter a guilty plea, Tewee admitted that he intentionally retained possession of the 4-Runner in excess of the specifically agreed to time.

We conclude that Tewee's criminal actions that led to his Oregon conviction did not constitute Washington's taking of a motor vehicle without permission. In Washington, once a person obtains permission to use an automobile he cannot violate former RCW 9A.56.070(1)

(1975)[3] even if he exceeds the scope of that permission. *State v. Clark*, 96 Wn.2d 686, 692, 638 P.2d 572 (1982). Because the indictment provided that Tewee obtained permission from the vehicle's owner, Tewee's Oregon conviction is not factually comparable to the Washington's taking a motor vehicle statute. Therefore, the trial court erred in reaching the opposite conclusion during sentencing. *See State v. Thomas*, 135 Wn. App. 474, 480 144 P.3d 1178 (2006), *review denied*, 161 Wn.2d 1009 (2007).

Because the trial court erred in finding that Tewee's Oregon conviction was comparable to a Washington taking a motor vehicle without permission conviction, it also erred in adding a point to Tewee's offender score for that conviction. Therefore we remand for resentencing.[4]

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## TEWEE'S REMAINING ASSERTIONS

Tewee is AB's maternal uncle. In 2010, 11-year-old AB, her younger brother MB, and Tewee lived with AB's maternal grandparents. AB slept with her grandmother in her grandmother's room and Tewee slept on the couch while her grandfather had his own room and

---

[3] *Clark* addressed the 1975 version of the statute. It was amended in 2002, but the applicable language remained consistent.

[4] On resentencing the trial court is free to compare the 2003 Oregon unauthorized use of a motor vehicle conviction to other Washington offenses. Tewee is entitled to a full resentencing on remand and the trial court has discretion to consider issues not raised at his initial sentencing or in this appeal. *State v. Davenport*, 140 Wn. App. 925, 932, 167 P.3d 1221 (2007), *review denied*, 163 Wn.2d 1041 (2008). And at resentencing, "the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." RCW 9.94A.530(2).

MB slept on the floor. One night in January or February 2010,[5] AB got out of bed to get a glass of water and as she walked by Tewee who was lying on the couch, he asked her to come give him a hug. AB commonly hugged Tewee and she did so on this occasion. While doing so, Tewee pulled her on top of him, reached under her pajamas and underwear, and began touching and rubbing her vagina.

About a month later, AB and MB went to live with AB's father BB, BB's girlfriend Jennifer Lastiri, and Lastiri's daughter NJ. BB became concerned about AB's behavior and attitude and thought that counseling might help her. BB and Lastiri made AB an appointment to see a counselor. Meanwhile, AB had told NJ that she had been molested but asked NJ not to tell anyone because she was scared. Nonetheless, NJ told Lastiri what AB told her. Later, Lastiri asked AB about it and AB told Lastiri what happened but told her that she was scared to tell BB. So Lastiri promised to keep it a secret so long as AB agreed to talk to her counselor about it. AB agreed.

A short time later, BB took AB to her initial counseling appointment with a child intake specialist therapist at Columbia River Mental Health (child therapist). AB told the child therapist about the touching incident. Later, AB talked with a detective, who was assigned to investigate AB's allegations.

In September 2010, the State charged Tewee with first degree child rape and first degree child molestation. During motions in limine, the parties discussed AB's hearsay statements and the "hue and cry" doctrine. 1 Verbatim Report of Proceedings (VRP) at 130. The trial court

---

[5] AB testified that it occurred "[a]round February" in 2010. 2 Verbatim Report of Proceedings at 196. The information alleged that it happened between January 1 and February 28, 2010.

decided that AB's disclosures were timely under "hue and cry" and that the detective could testify as to the facts of AB's disclosure to her, without the details and without the identifier. Also during motions in limine, the trial court found that AB's statements to the child therapist were admissible under the medical diagnosis or treatment hearsay exception, ER 803(a)(4).

At trial, AB testified about her relationship with Tewee prior to and after the touching incident and about the incident, but she could not remember whether he touched her on the inside part of her vagina or on the outside part of her vagina and also she could not remember how long the touching contact lasted. Also, Lastiri and NJ testified about what AB had told them about the touching incident. And BB testified about AB's actions and demeanor when she came to live with him, her relationship with Tewee, and his concerns about her.

The State also called two police officers: the officer who received BB's initial sexual abuse report, and the detective who interviewed AB. The detective testified that she interviewed AB. Specifically, the State asked:

> Q    Okay. And without going into the details of what [AB] told you, what was the basic general thing that she was talking to you about?
> A    About an inappropriate contact with her uncle.

2 VRP at 274. Tewee did not object.

The child therapist testified about her appointment with AB and that she first had talked with AB and BB but that AB had asked that BB leave the room before she told the child therapist about the sexual abuse by her uncle. The child therapist testified that AB told her that Tewee had penetrated her vagina with his finger, causing pain. After the appointment, the child therapist referred AB to another therapist for ongoing treatment and reported the abuse to Child Protective Services. Tewee did not object to the child therapist's testimony.

8

Tewee called three family members to testify, recalled AB, and also testified himself, generally denying the allegation that he touched AB in a sexual manner. He testified about his relationship with AB. The jury acquitted Tewee of first degree child rape. But it found Tewee guilty of first degree child molestation and also found that he misused a trust relationship to gain access to AB. At sentencing, the trial court entered an exceptional sentence based on the jury's finding that Tewee misused a trust relationship under RCW 9.94A.535(3)(n).

## I. ISSUE PRESERVATION

"The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). The purpose behind issue preservation rules is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals. *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011). A party must specifically object to evidence at trial to preserve the matter for appellate review and a party's failure to object can waive an error even when the trial court made a pretrial ruling on the evidence. *State v. Stein*, 140 Wn. App. 43, 68-69, 165 P.3d 16 (2007), *review denied,* 163 Wn.2d 1045 (2008). Thus, even when the trial court has already excluded evidence through a pretrial order, the complaining party should object at trial to any allegedly inadmissible evidence or testimony that violates the pretrial order in order to preserve the issue for review. *State v. Weber*, 159 Wn.2d 252, 272, 149 P.3d 646 (2006), *cert. denied,* 551 U.S. 1137 (2007). An objection at trial allows the trial court the opportunity to instruct the jury and limit such evidence. *Stein*, 140 Wn. App. at 69.

## A. "Hue and Cry" Testimony

Tewee argues that the detective's identification of him violated the "hue and cry" doctrine and that this identification is not harmless because the identification undoubtedly made an impression on the jury, especially coming from law enforcement. We disagree.

Here, the trial court made a pretrial ruling regarding the "hue and cry" testimony. The "hue and cry" doctrine is also known as the "fact of complaint" and refers to the general rule that in criminal trials for sex offenses, the prosecution may present evidence that the victim complained to someone after the assault. *State v. Ferguson*, 100 Wn.2d 131, 135, 667 P.2d 68 (1983). The rule admits only the evidence that establishes that the complaint was made and excludes details of the complaint, including the offender's identity and the act's nature. *Ferguson*, 100 Wn.2d at 135-36.

The trial court decided that AB's disclosure was timely and that the fact of the complaint, without the details and without the identifier, was admissible. Because Tewee did not object to the detective's trial testimony regarding AB's "inappropriate contact with her uncle," 2 VRP at 274, we hold the identification was an inadvertent remark and unresponsive to the State's question of "what was the basic general thing that she was talking to you about," and violated the trial court's pretrial order. 2 VRP at 274. Thus, Tewee was required to object, move to strike, or take other curative action in order to preserve the issue for appeal. Any prejudicial effect from this very limited testimony could easily have been corrected by a timely motion to strike the answer and instruction from the court. Tewee took no curative action, and we decline to review this issue.

## B.  Hearsay Statements From Counselor

Tewee next argues that the trial court abused its discretion in admitting hearsay statements from AB's counselor because AB did not seek medical treatment.  Again, Tewee failed to preserve this argument for review.

Here, during motions in limine, the trial court found that the child therapist's testimony fit within the medical diagnosis or treatment hearsay exception.  ER 801(a)(4).[6]  It ruled that the child counselor's statements were admissible under the medical treatment exception to the hearsay rule.  Then, before the State called the child therapist to testify during trial, Tewee noted his previous objection to her testifying and the trial court responded "[f]eel free to object during the testimony if you feel it's inappropriate."  3 VRP at 288.  Tewee did not then object during her testimony.  3 VRP at 288-94.  We hold that the trial court's instruction to Tewee to object if he felt that any of the child therapist's testimony was inappropriate required Tewee to do so in order to give the trial court a chance to correct any errors and that Tewee's failure to do so resulted in a failure to preserve the issue for appeal.

## II.  SUFFICIENCY OF EVIDENCE

Tewee further argues that insufficient evidence supports the abuse of trust aggravating factor because his relationship with AB did not satisfy the facilitation element of the aggravator.  We affirm the jury's finding because sufficient evidence supports the jury's abuse of trust.

---

[6] ER 803(a) provides:
> The following are not excluded by the hearsay rule . . . .
>> (4)  . . . Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

## A. Standard of Review

We review a jury's special verdict finding under the sufficiency of the evidence standard. *State v. Stubbs*, 170 Wn.2d 117, 123, 240 P.3d 143 (2010). Evidence is sufficient if it permits a reasonable fact finder to find each element of the charged crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). An insufficiency claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and the evidence's persuasiveness. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

## B. Discussion

To establish the abuse of trust aggravating factor, the State must prove that the "defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." RCW 9.94A.535(3)(n).[7] We consider two factors in determining whether the defendant abused a position of trust to merit an exceptional sentence: the relationship's duration and degree. *State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991). "'A relationship extending over a longer period of time, or one within the same household, would indicate a more significant trust relationship, such that the offender's abuse of that relationship would be a more substantial reason for imposing an exceptional sentence.'" *Grewe*, 117 Wn.2d at 219 (quoting *State v. Fisher*, 108 Wn.2d 419, 427, 739 P.2d 683 (1987)).

---

[7] The statute has been amended several times since 2010, but the applicable language remains the same.

The victim's vulnerability to trust due to the victim's age and the degree of the defendant's culpability are also important factors to consider. *State v. Bedker*, 74 Wn. App. 87, 95, 871 P.2d 673, *review denied*, 125 Wn.2d 1004 (1994).

Here, the evidence supporting the abuse of trust aggravator is overwhelming. At the time of the offense, AB lived at her grandmother's house with her grandmother, grandfather, brother, and Tewee. AB slept in her grandmother's room while Tewee slept on the couch. She also testified that she got along with Tewee well and that she commonly hugged him. Further, BB testified that AB and Tewee got along well, that they had a typical uncle and niece relationship, and that they commonly spent time together. Also BB and NJ testified that AB and Tewee would engage in horseplay and wrestle and tickle each other. Tewee himself even testified about his relationship with AB, saying that he loved her, that he would wrestle with her and tickle her—even testifying about where her "tickle spot[s]" were and that he would always help her with anything she needed. 3 VRP at 412. And the offense happened at the home in the middle of the night while others slept, where AB and Tewee both lived, and when Tewee asked AB to hug him. Therefore, a reasonable fact finder could determine that Tewee used the hug, something AB had been comfortable with before, to facilitate the offense in this case. These facts clearly allow a reasonable fact finder to determine that Tewee and AB had a close relationship of trust and that Tewee used that relationship to facilitate the offense.[8]

---

[8] Tewee relies on *State v. P.B.T.*, 67 Wn. App. 292, 834 P.2d 1051 (1992), *review denied*, 120 Wn.2d 1021 (1993), to argue that a defendant's access to a victim, without more, does not satisfy the facilitation element. Br. of Appellant at 20. But Tewee takes language of *P.B.T.* out of context and the case actually supports the State's position here.

Consequently, taken in the light most favorable to the State, sufficient evidence supports the jury's special verdict finding that Tewee used his position of trust to facilitate the offense.

### III. SAG ASSERTIONS

In his SAG, Tewee asserts that the trial court improperly included points for prior convictions because the State failed to properly prove the prior convictions.[9] The State must prove a defendant's criminal history by a preponderance of the evidence. *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). The Sentencing Reform Act (SRA) places the burden on the State to "introduce evidence of some kind to support the alleged criminal history, including the classification of out-of-state convictions." *Ford*, 137 Wn.2d at 480. The best evidence of a prior conviction is a certified copy of the judgment; however, the State may introduce other comparable documents of record or transcripts of prior proceedings to establish criminal history. *Ford*, 137 Wn.2d at 480. A prosecutor's bare allegations are not evidence, whether asserted orally or in a written document. *Hunley*, 175 Wn.2d at 915. If the State has failed to prove a defendant's prior convictions, the remedy is to remand for resentencing. *Hunley*, 175 Wn.2d at 915-16.

Before sentencing, the State filed a memorandum regarding Tewee's offender score and attached copies of court records of Tewee's prior convictions and a declaration of criminal history listing Tewee's prior convictions. The trial court counted seven prior convictions and found Tewee's offender score to be nine. The convictions that the trial court relied on included (1) a 1991 conviction for second degree malicious mischief, which was supported by a certified copy of the judgment and sentence; (2) the 2003 Oregon conviction for unauthorized use of a

---

[9] We address this issue because it is likely to recur at resentencing.

motor vehicle, which was also supported by a certified copy of the judgment and sentence; (3) a 1997 conviction for possession of a controlled substance, which was supported by a date stamped, signed copy of Tewee's petition to plead guilty and an uncertified but date stamped copy of the judgment and sentence signed by the court; and (4) a 1992 conviction for communication with a minor for immoral purposes, which was supported by an uncertified copy of a judgment and sentence that was signed by Tewee and the judge.

Tewee's remaining three counted convictions included two 1986 convictions for attempted indecent liberties and a 1991 conviction for taking a motor vehicle without permission. The State proved these convictions with declarations of criminal history and judgment and sentences from other prior convictions. For example, in 1991 when Tewee was convicted of second degree malicious mischief, he stipulated that he had two prior attempted indecent liberties convictions and one prior taking of a motor vehicle conviction. The State introduced the stipulation attached to that judgment and sentence and another stipulation that Tewee signed as part of his guilty plea for that crime. Also the State introduced Tewee's guilty plea for the 1992 conviction of communication with a minor for immoral purposes. Elements of that crime included Tewee's prior convictions of two counts of indecent liberties, which he stipulated to. We hold that the State proved all seven convictions by a preponderance of the evidence as required.[10]

Finally, Tewee asserts that AB was not a credible witness. But we defer to the trier of fact on issues of conflicting testimony, witness credibility, and the evidence's persuasiveness.

---

[10] Although as noted above, we have determined that Tewee's Oregon unauthorized use of a vehicle conviction is not comparable to Washington's taking a motor vehicle without permission offense.

No. 42538-6-II

*Camarillo*, 115 Wn.2d at 71. And Tewee mentions facts that apparently were not raised during trial that Tewee believes would have rebutted AB's credibility. Tewee may be attempting to raise an ineffective assistance of counsel claim for counsel's failure to bring that evidence at trial but, if so, his argument is based on facts outside our record and therefore we cannot review it on appeal. *State v. Grier*, 171 Wn.2d 17, 29, 246 P.3d 1260 (2011).

We affirm the conviction, reverse in part, and remand for resentencing.

Johanson, J.

We concur:

Worswick, C.J.

Lee, J.P.T.